Filed 11/14/13  Padayao v. Island Hospitality Management CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| CHERRYMAE PADAYAO et al., | H037990 |
| Plaintiffs and Appellants, | (Santa Clara County Super. Ct. No. 1-10-CV165137) |
| v. | |
| ISLAND HOSPITALITY MANAGEMENT, INC., | |
| Defendant and Respondent. | |

## I.  INTRODUCTION

Appellants Cherrymae Padayao and Vivica Victug (plaintiffs) were employed by respondent Island Hospitality Management, Inc. (Island Hospitality) from 1990 until 2009, when they were terminated from their positions as housekeeping supervisors at a hotel.  Plaintiffs, who are both Filipino, filed a wrongful termination action alleging that Island Hospitality's decision to terminate them was based upon their race and/or national origin.  Plaintiffs' complaint included causes of action for discrimination in violation of the Fair Employment and Housing Act (Gov. Code, § 12940) and wrongful termination in violation of public policy.

Island Hospitality moved for summary judgment on the ground that the undisputed facts showed that plaintiffs were terminated for nondiscriminatory reasons:  their failure to ensure that hotel rooms were clean and, in Padayao's case, her failure to follow

procedures regarding the hotel's pet log.  The trial court granted the summary judgment motion, finding that no triable issue of fact existed because plaintiffs failed to present substantial evidence showing that Island Hospitality's reasons for the terminations were pretextual or that Island Hospitality had acted with discriminatory intent.

On appeal, plaintiffs contend that a triable issue of fact exists as to whether Island Hospitality terminated them due to their race and/or national origin.  For the reasons stated below, we determine that Island Hospitality met its burden on summary judgment to show legitimate, nondiscriminatory reasons for terminating plaintiffs.  (See *Guz v. Bechtel National, Inc.* (2000) 24 Cal.4th 317, 357 (*Guz*).)  We also determine that plaintiffs produced no substantial evidence from which it could be reasonably inferred that Island Hospitality terminated them on the basis of their race and/or national origin.  (See *id.* at p. 360.)  Therefore, we will affirm the judgment in Island Hospitality's favor.

## II.  FACTUAL BACKGROUND

Our factual summary is drawn primarily from the parties' separate statements of fact submitted in connection with Island Hospitality's motion for summary judgment.  In setting out the facts we regard as material, we will note those that plaintiffs have disputed.

Plaintiffs are both Filipino.  Both worked as housekeeping supervisors at the Residence Inn by Marriott (the hotel) in Sunnyvale, which is managed by Island Hospitality.  Both had worked at the hotel since 1990.  As housekeeping supervisors, plaintiffs were responsible for inspecting rooms that had been cleaned by housekeepers, then designating the rooms as "guest-ready" if the rooms were in fact clean.  Plaintiffs reported to the executive housekeeper.

The hotel allowed guests to keep pets in the rooms, and a pet log was maintained to ensure the housekeeping staff provided additional cleaning after the pet stay.  The pet log entries were made by the housekeeping supervisors or the executive housekeeper.

2

In December of 2008, Island Hospitality hired Kathy McClintock, who is of Mexican heritage, as the executive housekeeper. McClintock was informed that the hotel had a history of low scores on guest satisfaction surveys. The prior executive housekeeper had been disciplined, and ultimately terminated, for failing to improve the housekeeping department's performance and survey scores.

According to McClintock, after she was hired she met with the hotel's housekeeping staff, including plaintiffs, to review their job duties and the hotel's housekeeping policies and procedures. Plaintiffs both denied that they met with McClintock.

### A.    *Vitug's Termination*

In a declaration, McClintock claimed she reviewed the housekeeping policies and procedures with Vitug on December 22, 2008, after finding that rooms designated by Vitug as "guest-ready" had not been cleaned in compliance with those policies and procedures. In her own declaration, Vitug disputed that she had designated as "guest-ready" any rooms that were not completely clean, and she disputed that McClintock reviewed any policies or procedures with her on that date.

McClintock claimed that on January 14, 2009, she found that more rooms designated by Vitug as "guest-ready" had not been cleaned in compliance with the housekeeping policies and procedures, and that afterwards, she again reviewed the policies and procedures with Vitug. Vitug again disputed the truth of McClintock's declaration.

According to McClintock, on January 16, 2009 she found that four more rooms designated by Vitug as "guest-ready" had not been cleaned in compliance with the housekeeping policies and procedures. In her declaration, Vitug disputed that three of the rooms were not cleaned properly, and she disputed that the fourth room had been assigned to her that day.

3

McClintock asserted that on January 19, 2009, she found that two more rooms designated by Vitug as "guest-ready" had not been cleaned in compliance with the housekeeping policies and procedures. Vitug again disputed that the rooms were not cleaned properly.

On January 19, 2009, Vitug received a written warning. The warning stated that she needed to improve her job performance by inspecting rooms carefully prior to designating them as "guest-ready." The warning also stated that any other infraction could result in further disciplinary actions.

On January 21, 2009, McClintock found an ozone air purifying machine in a room that Vitug had designated as "guest-ready."

On January 22, 2009, a hotel guest complained that a room was dirty. The room had not been occupied since January 14, 2009. McClintock believed, but Vitug disputed, that Vitug was the only housekeeping supervisor at the hotel on January 14, 2009 and thus had been responsible for ensuring that the room was cleaned. Vitug received another written warning following the January 22, 2009 incident. The warning stated that another infraction would result in Vitug's termination.

According to McClintock, on January 26, 2009, she found that two more rooms designated by Vitug as "guest-ready" had not been cleaned in compliance with the housekeeping policies and procedures. In her declaration, Vitug disputed that the rooms were not cleaned properly.

Vitug was terminated on January 26, 2009.

### B. Padayao's Termination

In her declaration, McClintock stated that she reviewed the housekeeping policies and procedures with Padayao on December 24 and 26, 2008, and on January 14, 15, and 16, 2009. In her own declaration, Padayo disputed that any such reviews occurred.

McClintock also claimed that on January 16, 2009, she found that two rooms designated by Padayao as "guest-ready" had not been cleaned in compliance with the

4

housekeeping policies and procedures, and that she then reviewed the policies and procedures with Padayao. Padayao disputed these claim in her declaration.

On January 21, 2009, Padayao received a written warning. The warning stated that she needed to improve her job performance by inspecting rooms carefully prior to designating them as "guest-ready." The warning also stated that any other infraction could result in further disciplinary actions.

On May 4, 2009, Padayao received a second written warning. The warning concerned her failure to comply with the pet log procedures, and it stated that any other infraction could result in further disciplinary actions. The hotel's pet log policy requires the housekeepers to inform the housekeeping supervisors or the executive housekeeper that there is a pet in the room. The housekeeping supervisors or the executive housekeeper must then make a notation in the pet log. According to McClintock's declaration, the pet log notation must be made as soon as possible, but Padayao believed that the pet log notation only needed to be made some time before the guest checked out of the hotel. The written warning noted that no pet log notations had been made between December 2008 and May 2009.

On September 17, 2009, McClintock determined that Padayao had not made an entry in the pet log for room 1623. Padayao admitted she knew a pet had been in that room for two days, but claimed she had been too busy to make an entry in the pet log. Also, she believed she did not need to log the pet until the guest checked out.

Padayao was terminated on September 17, 2009.

*C.*     *Padayao's Complaint*

A few days prior to her termination, on or about September 14, 2009, Padayao prepared a letter in which she complained that McClintock was discriminating against Filipino employees. The letter noted that McClintock had terminated four or five Filipino employees; that McClintock had hired 15 Mexicans but no Filipinos; and that

5

McClintock was giving more hours to Hispanic employees, particularly "her favorites," than to Filipino employees.

Nine employees, including Padayao, signed a blank piece of paper, which Padayao attached to the complaint letter. The letter was addressed to Philip Cohen, Island Hospitality's vice president of human resources, in Florida. The letter was postmarked on September 15, 2009 and received by Cohen on September 22, 2009.

McClintock and the hotel's general manager, Kurt Gursu, both denied they had any knowledge of Padayao's complaint at the time of her termination on September 17, 2009.

Island Hospitality investigated Padayao's complaint between September 22, 2009 and October 2, 2009. Cohen instructed Gursu and Gregg Forde, Island Hospitality's regional general manager for Northern California, to investigate the complaint. Forde confirmed that McClintock had not hired any Filipinos in the housekeeping department, but that she had hired 15 new Hispanic employees. Forde determined that many of Padayao's accusations about discriminatory treatment were false. For instance, Padayao had claimed that a particular Hispanic employee had been promoted, but Forde determined that this was untrue. Likewise, Forde determined it was untrue that McClintock told some employees not to come in so that she could give the hours to her " 'favorites.' " Based on the investigation by Forde and Guru, Island Hospitality concluded there was no evidence that Filipinos had been discriminated against.

### D.    Other Employees

During McClintock's tenure as executive housekeeper, which lasted from December of 2008 through April 8, 2010, thirty-four housekeeping employees separated from the hotel. Twenty-six employees had separated voluntarily by resigning or abandoning their jobs, and eight employees had been involuntarily terminated. Six of the

involuntarily terminated employees were Filipino. The other two involuntarily terminated employees were Hispanic.[1]

During the same time period, the hotel hired 30 new employees to work in the housekeeping department. Twenty-five of the new employees were Hispanic, three were Filipino, one was African-American, and one was Caucasian. McClintock knew some of the new Hispanic employees from working with them at a different hotel. The three new Filipino employees were hired after the investigation of Padayao's complaint.

The hotel advertised for new employees primarily by posting job openings on websites. The hotel also prepared flyers regarding housekeeping jobs. Following the investigation of Padayao's complaint, the flyers were translated into Spanish, Tagalog, and Vietnamese.

### III. PROCEDURAL BACKGROUND

#### A.    *The Complaint*

The record reflects that the operative complaint is the first amended complaint (hereafter, the complaint) filed on April 2, 2010.[2]

In their first cause of action, plaintiffs alleged that Island Hospitality violated the California Fair Employment and Housing Act (FEHA) (Gov. Code, § 12940) by discriminating against them on the basis of their race and/or national origin.

---

[1] Plaintiffs asserted, as an undisputed fact, that there were a total of 10 Filipino employees in the housekeeping department at the time of McClintock's hiring. The trial court sustained Island Hospitality's objection to the evidence plaintiffs produced in support of that fact.

[2] A third plaintiff, Estefania Poquiz, participated in the lawsuit from the time the original complaint was filed until shortly before Island Hospitality filed its motion for summary judgment. In its motion for summary judgment, Island Hospitality noted that it had recently settled with Poquiz.

7

In their second cause of action, plaintiffs alleged that Island Hospitality wrongfully terminated them because of their race and/or national origin, in violation of public policy as set forth in article I, section 8 of the California Constitution.

In their third cause of action, plaintiffs alleged that Island Hospitality wrongfully terminated them because of their race and/or national origin, in violation of public policy as set forth in the FEHA.

The fourth and fifth causes of action were brought by Padayao alone. Padayao alleged that Island Hospitality retaliated against her when she complained about its discrimination and that Island Hospitality failed to properly investigate her complaint.[3]

## B.    The Motion for Summary Judgment

Island Hospitality filed a motion for summary judgment, or, in the alternative, summary adjudication, arguing that plaintiffs failed to state a prima facie case of discrimination, that plaintiffs were terminated for legitimate, non-discriminatory reasons, and that plaintiffs could not establish that Island Hospitality's actions were a pretext for discrimination.

In opposition to the motion for summary judgment, plaintiffs argued that there were triable issues of fact. They argued that they had established a prima facie case of discrimination and that Island Hospitality's proffered reasons for the terminations were pretextual.

On October 25, 2011, the trial court granted Island Hospitality's motion for summary judgment. The court found that Island Hospitality had "provided legitimate, non-discriminatory reasons for Plaintiffs' terminations." The court noted plaintiffs' disagreement about whether certain rooms were dirty and whether they had properly followed policies and procedures, but found those disagreements "insufficient to show

---

[3] On appeal, Padayao has not raised any issues with respect to either of these causes of action.

8

the terminations were motivated by discrimination." The court further found that plaintiffs had not provided any direct evidence of discriminatory intent, and that the statistical evidence about terminations and hiring was insufficient to show pretext. Finally, the court found "no evidence of individual instances of discriminatory treatment."

Judgment was entered in favor of Island Hospitality on December 22, 2011.

## IV. DISCUSSION

On appeal, plaintiffs contend that triable issues of fact exist as to whether Island Hospitality terminated their employment because they were Filipino. Before addressing plaintiffs' contention, we will outline the applicable standard of review.

### A. *Standard of Review*

The standard of review for an order granting a motion for summary judgment is de novo. (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 860 (*Aguilar*).)

In performing our independent review, we apply the same three-step process as the trial court. "Because summary judgment is defined by the material allegations in the pleadings, we first look to the pleadings to identify the elements of the causes of action for which relief is sought." (*Baptist v. Robinson* (2006) 143 Cal.App.4th 151, 159 (*Baptist*).)

"We then examine the moving party's motion, including the evidence offered in support of the motion." (*Baptist*, *supra*, 143 Cal.App.4th at p. 159.) A defendant moving for summary judgment has the initial burden of showing that a cause of action lacks merit because one or more elements of the cause of action cannot be established or there is a complete defense to that cause of action. (Code Civ. Proc., § 437c, subd. (o)[4]; *Aguilar, supra*, 25 Cal.4th at p. 850.)

---

[4] All further statutory references are to the Code of Civil Procedure unless otherwise indicated.

9

If the defendant fails to make this initial showing, it is unnecessary to examine the plaintiff's opposing evidence and the motion must be denied. However, if the moving papers make a prima facie showing that justifies a judgment in the defendant's favor, the burden shifts to the plaintiff to make a prima facie showing of the existence of a triable issue of material fact. (§ 437c, subd. (p)(2); *Aguilar, supra*, 25 Cal.4th at p. 849; *Kahn v. East Side Union High School Dist.* (2003) 31 Cal.4th 990, 1002-1003.)

In determining whether the parties have met their respective burdens, "the court must 'consider all of the evidence' and 'all' of the 'inferences' reasonably drawn therefrom [citations], and must view such evidence [citations] and such inferences [citations], in the light most favorable to the opposing party." (*Aguilar, supra*, 25 Cal.4th at p. 843.) "There is a triable issue of material fact if, and only if, the evidence would allow a reasonable trier of fact to find the underlying fact in favor of the party opposing the motion in accordance with the applicable standard of proof." (*Id.* at p. 850, fn. omitted.) Thus, a party "cannot avoid summary judgment by asserting facts based on mere speculation and conjecture, but instead must produce admissible evidence raising a triable issue of fact. [Citation.]" (*LaChapelle v. Toyota Motor Credit Corp.* (2002) 102 Cal.App.4th 977, 981.)

We will begin our evaluation of the order granting Island Hospitality's motion for summary judgment with a brief overview of the legal framework governing summary adjudication of an employee's claim for discrimination.

**B.** ***Summary Adjudication of a Discrimination Claim***

California has adopted the three-stage, burden-shifting test known as the *McDonnell Douglas* test (*McDonnell Douglas Corp. v. Green* (1973) 411 U.S. 792) for determining the merits of a discrimination claim, including discrimination on the basis of race, ethnicity, or national origin. (*Guz, supra,* 24 Cal.4th at p. 354; *Reid v. Google, Inc.* (2010) 50 Cal.4th 512, 520, fn. 2 (*Reid*).)

"At trial, the *McDonnell Douglas* test places on the plaintiff the initial burden to establish a prima facie case of discrimination." (*Guz, supra*, 24 Cal.4th at p. 354.) In general, the elements of a prima facie case of discrimination are (1) the plaintiff was a member of a protected class; (2) the plaintiff was qualified for the position sought or performed competently; (3) the plaintiff suffered an adverse employment action, such as termination; and (4) "some other circumstance suggests discriminatory motive. [Citations.]" (*Id.* at p. 355.) "If, at trial, the plaintiff establishes a prima facie case, a presumption of discrimination arises. [Citations.]" (*Ibid.*)

If the plaintiff makes the required prima facie showing at trial, the burden shifts to the employer to produce admissible evidence sufficient to show a legitimate, nondiscriminatory reason for the adverse employment action. (*Guz, supra*, 24 Cal.4th at pp. 355-356.) "If the employer meets this burden, the employee then must show that the employer's reasons are pretexts for discrimination, or produce other evidence of intentional discrimination. [Citation.]" (*Reid, supra*, 50 Cal.4th at p. 520, fn.2.)

With regard to summary judgment, as this court has noted, an employer seeking summary judgment in a discrimination case may meet its burden by showing that one or more of the elements of a prima facie case are lacking or that the adverse employment action was based on a legitimate, nondiscriminatory reason. (*Cucuzza v. City of Santa Clara* (2002) 104 Cal.App.4th 1031, 1038 (*Cucuzza*).)

If the employer meets its initial burden in moving for summary judgment, the burden then shifts to the employee to "demonstrate a triable issue by producing substantial evidence that the employer's stated reasons were untrue or pretextual, or that the employer acted with a discriminatory *animus*, such that a reasonable trier of fact could conclude that the employer engaged in intentional discrimination or other unlawful action. [Citations.]" (*Cucuzza, supra*, 104 Cal.App.4th at p. 1038.)

In *Guz*, the California Supreme Court emphasized that "the great weight of federal and California authority holds that an employer is entitled to summary judgment if,

11

considering the employer's innocent explanation for its actions, the evidence as a whole is insufficient to permit a rational inference that the employer's actual motive was discriminatory." (*Guz*, *supra*, 24 Cal.4th at p. 361, fn. omitted.) "[A]n inference is reasonable if, and only if, it implies the unlawful motive is more likely than defendant's proffered explanation. [Citation.]" (*Cucuzza*, *supra*, 104 Cal.App.4th at p. 1038.) Speculation regarding the employer's unlawful motive in terminating the employee is insufficient to raise a triable question of fact regarding whether the employer's explanation was pretextual or false. (*Martin v. Lockheed Missiles & Space Co.* (1994) 29 Cal.App.4th 1718, 1735.)

Having reviewed the legal framework for summary adjudication of an employee's claim of discrimination and the applicable standard of review, we turn to our analysis of Island Hospitality's motion for summary judgment.

### C. Analysis

Plaintiffs implicitly concede that Island Hospitality met its burden of showing that that the adverse employment action was based on a legitimate, nondiscriminatory reason, such that the burden shifted back to plaintiffs. (See *Cucuzza, supra,* 104 Cal.App.4th at p. 1038.) Thus, the issue here is whether plaintiffs met their burden of "demonstrat[ing] a triable issue by producing substantial evidence that the employer's stated reasons were untrue or pretextual, or that the employer acted with a discriminatory *animus*, such that a reasonable trier of fact could conclude that the employer engaged in intentional discrimination or other unlawful action." (*Ibid*.)

### 1. Falsity of Reasons for Termination

Plaintiffs contend that Island Hospitality's proffered reasons for terminating them were false, and therefore pretextual. Plaintiffs assert that they provided evidence showing that they had performed their jobs satisfactorily. Plaintiffs refer to their declarations, in which each stated she had in fact checked the rooms at issue and found them clean. Plaintiffs claim their declarations are corroborated by the fact that

12

McClintock did not document the specific issues with the rooms nor review the rooms with either plaintiff. Plaintiffs also note that according to Vitug, some of the rooms were not Vitug's responsibility or had not actually been marked by Vitug as clean. As to Padayao's purported failure to comply with the pet log policy, plaintiffs assert that there was no written pet log policy, no mutually understood pet policy, and no consistent enforcement of any pet log policy.

"[E]vidence that the employer's claimed reason [for the employee's termination] is *false*—such as that it conflicts with other evidence, or appears to have been contrived after the fact—will tend to suggest that the employer seeks to conceal the real reason for its actions, and this in turn may support an inference that the real reason was unlawful." (*Mamou v. Trendwest Resorts, Inc.* (2008) 165 Cal.App.4th 686, 715.) However, "an inference of intentional discrimination cannot be drawn solely from evidence, if any, that the company lied about its reasons. The pertinent statutes do not prohibit lying, they prohibit discrimination. [Citation.]" (*Guz, supra,* 24 Cal.4th at pp. 360-361.) "Logically, disbelief of an Employer's stated reason for a termination gives rise to a compelling inference that the Employer had a different, unstated motivation, but it does not, without more, reasonably give rise to an inference that the motivation was a prohibited one." (*McGrory v. Applied Signal Technology, Inc.* (2013) 212 Cal.App.4th 1510, 1531-1532 (*McGrory*).)

The above principles were applied in *Hersant v. Department of Social Services* (1997) 57 Cal.App.4th 997, 1000 (*Hersant*), where the plaintiff alleged he was demoted on the basis of his age in violation of the FEHA. Hersant had presented a prima facie case of age discrimination, but the employer had made a showing that the demotion was for nondiscriminatory reasons. Specifically, the employer produced evidence showing Hersant had instituted policies that corrupted a computer database, failed to notify his superiors of those policies, and refused to follow instructions from his superiors. (*Ibid.*) Thus, the burden shifted back to Hersant, who presented evidence contradicting the

13

employer's explanation for the demotion. Nevertheless, the appellate court found that summary judgment was properly granted. Although "Hersant raised triable issues concerning whether the actions of [his employer] were reasonable and well considered," a trier of fact could not reasonably conclude that the employer's "stated reasons were implausible, or inconsistent or baseless." (*Id.* at p. 1009.) Therefore, "it would not be reasonable to conclude they were pretextual and used merely to veil an act of age discrimination." (*Ibid.*)

Here, although plaintiffs denied that they had failed to perform their jobs properly, the evidence they submitted was insufficient to support an inference that the job performance issues were a pretext for discrimination. Notably, plaintiffs admitted some of the job performance criticisms – for instance, Vitug acknowledged she had left an ozone machine in a room but marked the room as "guest-ready," and Padayao admitted she failed to make any notations in the pet log for several months. Further, plaintiffs do not dispute that they were each given two written warnings prior to the terminations, and Padayao's employment continued for nearly eight months after her first written warning. Thus, the facts do not give rise to an inference that Island Hospitality's motivation for terminating plaintiffs was something other than their job performance, much less "to an inference that the motivation was a prohibited one." (*McGrory, supra,* 212 Cal.App.4th at p. 1532.) While plaintiffs have presented some evidence contradicting Island Hospitality's stated reasons for plaintiffs' terminations, the stated reasons are not so "implausible, or inconsistent or baseless" as to give rise to an inference that Island Hospitality's true motivation was unlawful. (*Hersant, supra,* 57 Cal.App.4th at p. 1009.)

### 2. Adequacy of Investigation

Plaintiffs next assert that pretext is shown because Island Hospitality only perfunctorily investigated Padayao's complaint. They note that the investigation was conducted primarily by Forde, who had no formal training in conducting investigations,

14

that he did not interview either Padayao or McClintock, and that he did not examine the hiring and firing statistics.

An inference of pretext may arise where an investigation is "not truly independent" (*Reeves v. Safeway Stores, Inc.* (2004) 121 Cal.App.4th 95, 119 (*Reeves*)) or is insufficiently " 'thorough.' " (*Nazir v. United Airlines, Inc.* (2009) 178 Cal.App.4th 243, 277 (*Nazir*).)

Here, Forde was employed by Island Hospitality as the regional general manager for Northern California, and no evidence indicates he had any personal connection to McClintock or plaintiffs. (Compare *Nazir, supra,* 178 Cal.App.4th at p. 277 [investigator had "an axe to grind" against plaintiff].) Although Forde lacked formal training in investigation of employee complaints, he had performed prior investigations "numerous times." He interviewed seven of the people who had signed Padayao's complaint as well as two other housekeepers. He examined work schedules in response to the complaint about McClintock's unequal work hours assignments. Further investigation was conducted by Gursu; he interviewed McClintock as well as the hotel's assistant general manager and the hotel's chief maintenance engineer. Although Padayao was not interviewed, it appears this was due to the fact she had recently been terminated. Based on this record, we find no evidence suggesting that Island Hospitality failed to conduct a "truly independent" (*Reeves, supra,* 121 Cal.App.4th at p. 119) or " 'thorough' " investigation (*Nazir, supra,* at p. 277), so as to raise an inference of pretext.

### 3. Statistics

Plaintiffs point to the statistics regarding the ethnicity of the employees fired and hired after McClintock became executive housekeeper, claiming the statistics create an inference that the non-discriminatory reasons for their termination were pretextual.

Plaintiffs' opening brief asserts that "within ten months of McClintock's hiring, eight of ten Filipino employees had been terminated or quit, and that McClintock hired 15 Hispanic employees to replace them." As noted above, the trial court sustained an

15

objection to the evidence plaintiffs provided in support of their claim that there were 10 Filipino employees at the time of McClintock's hiring.  (See fn. 1, *ante*.)  Thus, the trial court could not consider that evidence (see § 437c, subd. (c)), nor can we.  (See *Guz, supra,* 24 Cal.4th at p. 334 [after a summary judgment motion has been granted, appellate court must consider "all the evidence set forth in the moving and opposition papers except that to which objections have been made and sustained"].)[5]

The undisputed evidence established that eight employees in the housekeeping department were involuntarily terminated during McClintock's tenure as executive housekeeper.  Six of those employees were Filipino; the other two were Hispanic.  During the same time period, the hotel hired 30 new employees to work in the housekeeping department.  Twenty-five of the new employees were Hispanic, three were Filipino, one was African-American, and one was Caucasian.

"A disparate treatment plaintiff may rely on statistical evidence to establish a *prima facie* case . . . , or 'to show that a defendant's articulated nondiscriminatory reason for the employment decision in question is pretextual,' . . . .  Statistical data is relevant because it can be used to establish a general discriminatory pattern in an employer's hiring or promotion practices.  Such a discriminatory pattern is probative of motive and can therefore create an inference of discriminatory intent with respect to the individual employment decision at issue.  [Citation.]" (*Lowe v. City of Monrovia* (9th Cir. 1985) 775 F.2d 998, 1008.)[6]  "On the other hand, '[s]tatistics taken in isolation are generally not probative of . . . discrimination,' [citation], and statistical evidence on its own 'will rarely suffice' to show pretext, [citation].  At the very least, in order to create an inference of

---

[5] Plaintiffs do not challenge the trial court's evidentiary ruling on appeal.

[6] " ' "Because the antidiscrimination objectives and relevant wording of title VII of the Civil Rights Act of 1964 (Title VII) [(42 U.S.C. § 2000e et seq.)] [and other federal antidiscrimination statutes] are similar to those of the FEHA, California courts often look to federal decisions interpreting these statutes for assistance in interpreting the FEHA." ' [Citation.]"  (*Richards v. CH2M Hill, Inc.* (2001) 26 Cal.4th 798, 812.)

16

pretext, 'a plaintiff's statistical evidence must focus on eliminating nondiscriminatory explanations for the disparate treatment by showing disparate treatment between *comparable* individuals.' [Citation.]" (*Timmerman v. U.S. Bank, N.A.* (10th Cir. 2007) 483 F.3d 1106, 1114-1115 (*Timmerman*).)

Statistical evidence and evidence of disparate treatment created an inference of pretext in *Damon v. Fleming Supermarkets of Florida, Inc.* (11th Cir. 1999) 196 F.3d 1354 (*Damon*), which is cited by plaintiffs in this case. In *Damon,* the plaintiffs had been employed as managers of supermarkets; both were over age 40. After the defendant acquired a supermarket chain, it hired a new district manager to oversee seven of the supermarkets. The new district manager soon terminated the two plaintiffs: one for job performance issues; the other for yelling at another employee on the sales floor. The new district manager also terminated or demoted three other older, more experienced managers, and he replaced all of the older managers with men who were younger and less experienced. He did not terminate any younger managers during the same time period. (*Id.* at p. 1358.) The new district manager had actually advertised for new managers before there were any vacancies, and he had made a remark about wanting " 'aggressive, *young* men' like himself to be promoted." (*Id*. at p. 1362.) Moreover, one of the younger replacement managers had serious performance problems, "and yet, was not fired." (*Id.* at p. 1364.) Likewise, there was evidence that the new district manager himself had yelled at employees in front of customers. The court found that this circumstantial evidence, "taken as a whole, is sufficient to make a prima facie showing of age discrimination, and to rebut the nondiscriminatory reasons" for the plaintiffs' terminations that the defendant had proffered. (*Id.* at p. 1366.)

In this case, the statistics presented by plaintiffs do not create a similar inference of discrimination, particularly since there is no evidence of " 'disparate treatment between *comparable* individuals.' [Citation.]" (*Timmerman, supra,* 483 F.3d at p. 1115.) Plaintiffs presented evidence that during McClintock's tenure, six Filipino

17

employees were involuntarily terminated. However, two Hispanic employees were also involuntarily terminated during the same time period. (Cf. *Damon, supra,* 196 F.3d at p. 1358.) Plaintiffs presented no evidence that other employees had similar performance issues but were not terminated. Although McClintock herself had not made any pet log entries and was not disciplined, it was undisputed that McClintock – a newer employee – had not previously known about the pet log policy, whereas Padayao had been aware of the policy as a longer-tenured employee. Moreover, McClintock was hired specifically to improve the performance of the housekeeping department, not simply because of a corporate take-over as in *Damon*, where the timing of the terminations helped create an inference that the stated reasons were a pretext for discrimination.

### 4. Recruitment Practices

Finally, plaintiffs assert that Island Hospitality specifically recruited Hispanics, and that this demonstrated that Island Hospitality's reasons for terminating plaintiffs were pretextual.

Plaintiffs claim to have "produced evidence that McClintock confined her recruiting efforts to the posting of open positions in Spanish-language posters which were distributed in local Hispanic markets" until after Padayao sent in her complaint. That evidence was Padayao's declaration, which asserted that "Fliers were the primary way the Hotel advertised for new employees" and that McClintock "had a flier made in English and Spanish and asked the housekeepers to hand them in Mexican markets."

Significantly, the trial court sustained Island Hospitality's objections to the evidence cited by plaintiffs. Thus, that evidence may not be considered. (See § 437c, subd. (c); *Guz, supra,* 24 Cal.4th at p. 334.)[7]

Even more significantly, Island Hospitality produced evidence that the hotel's primary means of advertising for new employees was posting job openings on websites

---

[7] Again, plaintiffs do not challenge the trial court's evidentiary ruling on appeal.

that do not target people of any particular race or national origin. As plaintiffs have not cited any admitted evidence to support their claim of targeted recruiting, the allegedly discriminatory recruiting practices did not create an inference that plaintiffs' performance issues were a pretext for discrimination.

### 5. Cumulative Showing

We acknowledge that "[i]n discrimination cases, proof of the employer's reasons for an adverse action often depends on inferences rather than on direct evidence." (*Cucuzza*, *supra*, 104 Cal.App.4th at p. 1038.) However, "even though we may expect a plaintiff to rely on inferences rather than direct evidence to create a factual dispute on the question of [the employer's] motive, a material triable controversy is not established unless the inference is reasonable. And an inference is reasonable if, and only if, it implies the unlawful motive is more likely than defendant's proffered explanation. [Citation.]" (*Ibid*.)

Here, considered cumulatively, the evidence presented by plaintiffs does not permit a rational inference that a discriminatory reason for their termination is more likely than the job performance reasons proffered by Island Hospitality. As discussed above, plaintiffs did not produce substantial evidence that the stated reasons for their terminations were so implausible, inconsistent or baseless as to give rise to an inference that Island Hospitality's true motivation was unlawful. (*Hersant, supra,* 57 Cal.App.4th at p. 1009.) Plaintiffs also presented no substantial evidence suggesting that Island Hospitality's investigation was significantly inadequate. Likewise, the termination and hiring statistics did not constitute substantial evidence that comparable employees were disparately treated. (*Timmerman, supra,* 483 F.3d at p. 1115.) Finally, no substantial evidence shows that Island Hospitality's recruitment was discriminatory.

We therefore determine that plaintiffs did not satisfy their burden in opposing Island Hospitality's motion for summary judgment to rebut Island Hospitality's "facially dispositive showing by pointing to evidence which nonetheless raises a rational inference

19

that intentional discrimination occurred.  [Citation.]"  (*Guz*, *supra*, 24 Cal.4th at p. 357.)  The trial court did not err in granting Island Hospitality's motion for summary judgment.

## V.  DISPOSITION

The judgment is affirmed.

_____
BAMATTRE-MANOUKIAN, J.

WE CONCUR:

_____
ELIA, ACTING P.J.

_____
MÁRQUEZ, J.

20