[No. H023698. Sixth Dist. Dec. 23, 2002.]

SUE CUCUZZA, Plaintiff and Appellant, v.
CITY OF SANTA CLARA, Defendant and Respondent.

**COUNSEL**

Law Offices of Robert David Baker and Robert David Baker for Plaintiff and Appellant.

Curiale Dellaverson Hirschfeld Kramer & Sloan, Linda A. Tripoli and Kimberly J. Wedding for Defendant and Respondent.

**OPINION**

**PREMO, Acting P. J.**—Plaintiff Sue Cucuzza sued her employer, the City of Santa Clara (City) under the California Fair Employment and Housing Act. (Gov. Code, § 12900 et seq.) Plaintiff claimed that beginning in 1993 City had unlawfully discriminated against her by limiting her job duties to clerical and administrative tasks and assigning technical duties to less qualified men. City filed a motion for summary judgment on the ground that the statute of limitations barred any action on most of the adverse actions alleged and that it had a legitimate, nondiscriminatory explanation for the conduct that occurred within the limitations period. The trial court granted the motion and entered judgment in favor of City.

Plaintiff argues on appeal that none of the incidents of which she complains are barred because City's conduct was a "continuing violation" of the Fair Employment and Housing Act as defined by *Richards v. CH2M Hill, Inc.* (2001) 26 Cal.4th 798 [111 Cal.Rptr.2d 87, 29 P.3d 175] (*Richards*). We find that the continuing violation doctrine does not apply in this case and that summary judgment was properly granted.

## FACTS

City hired plaintiff in 1988 as a purchasing utility worker in City's Automotive Services Department (Automotive Services). In 1990, City promoted her to the newly created position of service writer/parts manager. Automotive Services handled all the purchasing, maintaining, fueling and repairing of City's vehicles and other mechanical equipment. As service writer/parts manager, plaintiff was responsible for administrative tasks such as receiving and issuing equipment, overseeing the parts inventory, and scheduling repairs, as well as tasks that plaintiff characterizes as technical, such as making service calls to contractors, negotiating labor charges with outside vendors, and taking vehicle complaints. It was the technical duties that plaintiff most wanted to do. And she much preferred working in the shop area where the mechanics worked rather than in the administrative offices. Plaintiff gradually assumed responsibility for the technical tasks during her first year in the service writer/parts manager position. The shop foreman, the senior equipment mechanic, or others had performed the technical tasks before plaintiff began doing them around 1991.

In 1993, City hired Claude Edwards as the "As Needed" shop foreman.[1] Edwards immediately began performing the technical tasks that plaintiff had performed for the preceding two years and restricted her from working in the shop area. These changes did not reduce plaintiff's pay or benefits.

In February 1994, plaintiff filed a grievance against her immediate supervisor, Rick Teebay. Although her grievance does not mention sex discrimination or Claude Edwards, plaintiff now insists that she filed the grievance because she believed that Edwards was discriminating against her on the basis of her sex. She suspected discrimination because the only other women who worked in Automotive Services had clerical or administrative jobs and worked in the front office, and Edwards had told plaintiff to go work in the front office "where [she] belonged."

In response to plaintiff's grievance, Jerome Reynolds, Director of Personnel Services, offered her a position as meter reader in the Division of Municipal Services. Plaintiff asked Reynolds if the transfer was the only option she had to get out of the situation in Automotive Services and Reynolds told her that it was. Plaintiff accepted the transfer, but stayed in Municipal Services for only a year. She transferred back to the service writer/parts manager position in March 1995 and set up her workspace in Edwards's office, which was located in the shop area.

---

[1] "As Needed" is a designation City used for temporary assignments that did not have any civil service status.

When she returned to Automotive Services in 1995, plaintiff had expected to be allowed to resume the technical duties she had lost in 1993. Her expectation was based on the fact that Robert Mortenson, Director of Public Works, had encouraged her to return to the service writer/parts manager position and, as far as plaintiff was concerned, the service writer job included the technical duties. Plaintiff had hoped Mortenson knew that to be so when he encouraged her to transfer back, but she admits she never discussed the issue with him.

Within two weeks of her return to Automotive Services, plaintiff realized that Edwards intended to continue performing the technical tasks. She immediately suspected that he was again discriminating against her based on her sex. Rather than trying to correct what plaintiff perceived as discrimination, she recalls: "I didn't talk to Bob [Mortenson] about it. I bided my time." When Edwards was promoted to Automotive Services Maintenance Supervisor in July 1995, he officially became plaintiff's supervisor. Plaintiff was concerned about having to report to Edwards, but she also kept this concern to herself.

For about a year and a half to two years after her March 1995 return to Automotive Services, plaintiff continually asked Edwards to be allowed to go out on the shop floor and work as a service writer. Edwards invariably told her that they did not need her to do the service writer tasks because the shop foreman did them. He told her that he needed her in the office to help him with the budget, among other things.

Automotive Services was reorganized several times over the years. In 1996 plaintiff's service writer/parts manager position was reclassified. Her job title changed and her salary was increased by 2.3 percent. In her new position plaintiff was assigned a variety of administrative and clerical duties. Plaintiff was told that her old position had been reclassified because a service writer was not needed. The written job description for the new position included administrative and clerical duties but it also listed at least some technical job duties. Even so, Edwards or persons other than plaintiff continued to perform all the technical in-shop duties.

Beginning around 1997, Edwards began writing the vehicle and equipment specifications and maintaining contact with vendors, tasks that plaintiff had been performing since 1995. And in late 1997, Edwards shoved plaintiff's desk out of his office and told her to "go find room up in the [front] office with the other women."

On March 23, 1998, City hired Art Vizcarra into the position of "As Needed" equipment mechanic/technician. Vizcarra immediately began performing the technical duties that plaintiff had performed from 1991 until

1993. In fact, Edwards introduced Vizcarra to the staff as the new service writer. Plaintiff asked Edwards why she wasn't given the job and Edwards told her she wasn't qualified. Plaintiff also complained to Richard Mauck, Director of Streets and Automotive Services, and Mauck's response was: "What do you mean you are the Service Writer?" Plaintiff tried to explain to Mauck her history as service writer and the fact that the position was supposed to have been phased out. Mauck told her he would investigate.

On September 22, 1998 plaintiff filed an administrative complaint with the Department of Fair Employment and Housing alleging that she had been denied the job of service writer "because my managers do not feel a woman should hold that position." Sometime after plaintiff filed her administrative complaint, City decided to downgrade the equipment mechanic/technician position and create a lower level position of fleet assistant. The job duties of the fleet assistant were essentially the technical job duties that plaintiff performed from 1991 through 1993 with the addition of certain computer-based responsibilities that were not part of the job in 1993. Vizcarra was appointed to fill the fleet assistant position on an "As Needed" basis while City conducted a civil service examination to permanently fill it.

Plaintiff, Vizcarra, and two others applied for the permanent fleet assistant position. Edwards took no part in the recruitment, testing, recommendation or approval process. City formed a committee of three outside raters, who were neither related to nor employed by City, to conduct the oral examination. Vizcarra received the highest oral examination score of 90 percent. Plaintiff scored fourth overall with a score of 72 percent. Vizcarra also possessed an automotive/heavy duty truck technician certification and an ASE parts specialist certification, two "highly desirable" qualifications for the fleet assistant position that plaintiff did not possess. City chose Vizcarra for the job.

Discussion

1. *Legal Framework*

In this appeal from summary judgment, we begin with well settled rules. Any party may move for summary judgment in an action if it is contended that the action has no merit. (Code Civ. Proc., § 437c, subd. (a).) A defendant seeking summary judgment bears the initial burden of proving the cause of action has no merit by showing that one or more of its elements cannot be established or there is a complete defense to it, such as the statute of limitations. (Code Civ. Proc., § 437c, subds. (a), (o)(2); *Addy v. Bliss & Glennon* (1996) 44 Cal.App.4th 205, 213 [51 Cal.Rptr.2d 642]; *Martin v.*

*Lockheed Missiles & Space Co.* (1994) 29 Cal.App.4th 1718, 1730-1731 [35 Cal.Rptr.2d 181] (*Martin*).)

 The elements of a prima facie case of unlawful discrimination vary depending upon the facts. Generally, to prove her case, the plaintiff must provide evidence that (1) she was a member of a protected class, (2) she was qualified for the position she sought, (3) she suffered an adverse employment action, such as termination, demotion, or denial of an available job, and (4) some other circumstance that suggests discriminatory motive. (*Guz v. Bechtel National, Inc.* (2000) 24 Cal.4th 317, 355 [100 Cal.Rptr.2d 352, 8 P.3d 1089] (*Guz*).) A defending employer seeking summary judgment in a discrimination case may meet its burden by showing that one or more of these prima facie elements is lacking, or that the adverse employment action was based on legitimate nondiscriminatory factors. (*Caldwell v. Paramount Unified School Dist.* (1995) 41 Cal.App.4th 189, 203 [48 Cal.Rptr.2d 448].)

If the employer has met its burden by showing a legitimate reason for its conduct, the employee must demonstrate a triable issue by producing substantial evidence that the employer's stated reasons were untrue or pretextual, or that the employer acted with a discriminatory *animus*, such that a reasonable trier of fact could conclude that the employer engaged in intentional discrimination or other unlawful action. (*Guz, supra,* 24 Cal.4th at p. 357; *Hersant v. Department of Social Services* (1997) 57 Cal.App.4th 997, 1004 [67 Cal.Rptr.2d 483] (*Hersant*).) "[S]peculation cannot be regarded as substantial responsive evidence." (*Martin, supra,* 29 Cal.App.4th at p. 1735.) In order to raise an issue as to the employer's credibility, the employee must set forth specific facts demonstrating " 'such weaknesses, implausibilities, inconsistencies, incoherences, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder *could* rationally find them "unworthy of credence." ' " (*Hersant, supra,* 57 Cal.App.4th at p. 1005.)

In discrimination cases, proof of the employer's reasons for an adverse action often depends on inferences rather than on direct evidence. "An inference is a deduction of fact that may logically and reasonably be drawn from another fact or group of facts found or otherwise established in the action." (Evid. Code, § 600, subd. (b).) Thus, even though we may expect a plaintiff to rely on inferences rather than direct evidence to create a factual dispute on the question of motive, a material triable controversy is not established unless the inference is reasonable. And an inference is reasonable if, and only if, it implies the unlawful motive is more likely than defendant's proffered explanation. (See *Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 858 [107 Cal.Rptr.2d 841, 24 P.3d 493].)

If plaintiff fails to produce substantial responsive evidence to demonstrate a material triable controversy, summary judgment is properly granted.

On an appeal from summary judgment we review the record de novo. (See *Guz, supra,* 24 Cal.4th at p. 334.) We are not bound by the trial court's stated reasons or rationales. (*Hersant, supra,* 57 Cal.App.4th at p. 1001.) We accept as true the facts alleged in the evidence of the party opposing summary judgment and the reasonable inferences that can be drawn from them. (*Ibid.*) "In undertaking our independent review of the evidence submitted, we apply the same three-step analysis as the trial court. First, we identify the issues framed by the pleadings. Next, we determine whether the moving party has established facts justifying judgment in its favor. Finally, if the moving party has carried its initial burden, we decide whether the opposing party has demonstrated the existence of a triable, material fact issue. [Citation.]" (*Chavez v. Carpenter* (2001) 91 Cal.App.4th 1433, 1438 [111 Cal.Rptr.2d 534].)

## 2. *The Issues as Framed by the Pleadings*

The Fair Employment and Housing Act (Gov. Code, § 12900 et seq.) makes it an "unlawful employment practice" for an employer, because of the sex of any person, "to refuse to hire or employ the person or to refuse to select the person for a training program leading to employment, or to bar or to discharge the person from employment or from a training program leading to employment, or to discriminate against the person in compensation or in terms, conditions, or privileges of employment." (Gov. Code, § 12940, subd. (a).) Plaintiff's complaint describes a violation of this section in that it alleges: "From approximately October, 1993 to present, the City of Santa Clara has continuously refused to allow Plaintiff to perform the technical duties of Service Writer; [¶] Similarly situated male employees who have held the position of Service Writer were allowed to perform the technical duties of that job classification; [¶] The reason Plaintiff has been denied the opportunity to perform the technical duties of the position of Service Writer is that she is a female and that the position is perceived as being a male position; [¶] As a further discriminatory conduct [*sic*] against Plaintiff, Plaintiff was denied the position of Service Writer in March, 1998. The position was given to a less qualified male, Art Viscara [*sic*]."[2]

To summarize, the question before us is whether there exists a triable issue of material fact to support plaintiff's claim that she was denied, on the

---

[2]Although the complaint describes two ways in which City violated plaintiff's rights under the Fair Employment and Housing Act—denying her the opportunity to perform certain technical job functions, and failing to hire her for a specific job—the parties have treated the pleading as stating but a single cause of action. Since both allegations relate to the single primary right to be free of gender discrimination in the workplace, we too shall consider the

basis of her sex, the opportunity to perform the technical duties she has described.

### 3. *The Statute of Limitations and the Continuing Violation Doctrine*

City argued in its moving papers that its liability for acts that occurred before September 1997 was barred by the statute of limitations. The statute of limitations for an action under the California Fair Employment and Housing Act is found in Government Code section 12960. With exceptions relating to delayed discovery that are not pertinent here, Government Code section 12960 provides: "No complaint may be filed after the expiration of one year from the date upon which the alleged unlawful practice or refusal to cooperate occurred. . . ." Plaintiff filed her administrative complaint on September 22, 1998, and the parties agree that we calculate the period of limitations from that date. Therefore, any conduct occurring prior to September 22, 1997, cannot serve as the basis for liability unless some exception to the one-year limitations period applies.

In support of its statute of limitations argument, City submitted evidence that when Edwards had taken plaintiff's technical duties from her in 1993, plaintiff was sure she was having gender discrimination problems and that even though plaintiff continued to suspect gender bias when she returned to Automotive Services in 1995, she made no further effort to resolve her dissatisfaction and instead chose to bide her time. In opposition, plaintiff claimed that her case involved "a series of closely related similar occurrences that took place within the same general time period and stem from the same source" such that City's conduct should be deemed a continuing violation that would not be barred by the statute of limitations. On appeal, plaintiff cites *Richards, supra*, 26 Cal.4th 798, for the same proposition. The trial court did not have benefit of the *Richards* decision when it ruled on City's motion. Based on then existing case law, the trial court concluded that there was no continuing violation. Plaintiff petitioned for rehearing after *Richards* was decided, and the court denied the petition as untimely, and also because it found that *Richards* did not warrant a different result. We agree.

"[T]he continuing violation doctrine comes into play when an employee raises a claim based on conduct that occurred in part outside the limitations period." (*Richards, supra*, 26 Cal.4th at p. 812.) *Richards* concerned a disabled employee's lawsuit alleging that her employer had failed to reasonably accommodate her disability by conduct that took place over a

---

allegations to constitute a single cause of action. (See *Bay Cities Paving & Grading, Inc. v. Lawyers' Mutual Ins. Co.* (1993) 5 Cal.4th 854, 860 [21 Cal.Rptr.2d 691, 855 P.2d 1263].)

five-year period. The Supreme Court was called upon to decide in what circumstances actions that took place outside the limitations period would be "sufficiently linked to unlawful conduct within the limitations period" such that they could form the basis for employer liability. (*Ibid.*)

The conflict in *Richards*, as here, was the parties' differing characterization of the unlawful employment practice alleged. Richards contended that the unlawful practice was her employer's continuing course of conduct in failing to reasonably accommodate her disability. She argued for application of the continuing violation doctrine as interpreted by the Ninth Circuit Court of Appeals. (*Richards, supra,* 26 Cal.4th at p. 818.) The Ninth Circuit used a broad test in which it simply considered whether separate acts of discrimination were related closely enough to form a continuing violation. (*Id.* at p. 816, citing *Counts v. Reno* (D. Hawaii 1996) 949 F.Supp. 1478, 1484-1486.) Richards's employer took the opposite position, stressing the separate nature of each of its actions. (*Richards, supra,* 26 Cal.4th at p. 818.) The employer argued for a narrow interpretation of the doctrine that would have limited any extension of the one-year limitations period to that permitted by the doctrine of equitable tolling. (*Ibid.*)

After analyzing the legislative objectives of the Fair Employment and Housing Act, *Richards* concluded that an employer's conduct over a period of time would be deemed a continuing violation "if the employer's unlawful actions are (1) sufficiently similar in kind . . . , (2) have occurred with reasonable frequency; (3) and have not acquired a degree of permanence. [Citation.]" (*Richards, supra,* 26 Cal.4th at p. 823.)

The first two prongs of the *Richards* test incorporate the broad issue of relatedness. *Richards* explained that in the context of reasonable accommodation, the statute of limitations should not be interpreted in a way that would short-circuit an ongoing accommodation process. (*Richards, supra,* 26 Cal.4th at p. 822.) If the employer's actions were sufficiently similar and reasonably frequent the actions will be deemed a continuing course of conduct rather than separate acts of misconduct, and the statute of limitations would not bar an offending employer's liability for even its earliest failure to accommodate. The court acknowledged, however, that it would be less than fair to the employer to allow the employee to extend the limitations period indefinitely. Therefore, *Richards* included the third prong, which sets an outside limit on the length of time a course of conduct may continue before it will be barred.

*Richards* determined that a lack of permanence should be one of the factors necessary to apply the continuing violation doctrine in order to fairly

balance the employee's interest in resolving the dispute with the employer's interest in preventing indefinite delays. (*Richards, supra,* 26 Cal.4th at pp. 820-823.) The court explained that if the statute were to accrue when the first incident occurred, the pressure to file a lawsuit before the statute expired could easily inhibit meaningful efforts at conciliation. But when the situation reached a state of permanence, then the plaintiff no longer has any reason to delay filing. *Richards* held that absent the employer's cessation of the unlawful conduct or the employee's separation from service, permanence would be achieved when "*an employer's statements and actions make clear to a reasonable employee that any further efforts at informal conciliation to obtain reasonable accommodation or end harassment will be futile.*" (*Id.* at p. 823, italics added.) "[A]n employer who is confronted with an employee seeking accommodation of disability or relief from disability harassment may assert control over its legal relationship with the employee either by accommodating the employee's requests, or by making clear to the employee in a definitive manner that it will not be granting any such requests, thereby commencing the running of the statute of limitations." (*Id.* at pp. 823-824.) *Richards* held that the statute of limitations begins to run in such a case when the unlawful practice ends, "*or* when the employee is on notice that further efforts to end the unlawful conduct will be in vain." (*Id.* at p. 823.)

■■■■ Although *Richards* was decided in the context of a disability accommodation and harassment claim, the high court's rationale applies to plaintiff's claim that City's ongoing denial of her right to certain employment opportunities was a continuing violation of the Fair Employment and Housing Act. The issue in either case is the same: whether the employer's conduct occurring outside the limitations period is sufficiently linked to unlawful conduct within the limitations period that the employer ought to be held liable for all of it. (*Richards, supra,* 26 Cal.4th at p. 812.)

In applying the *Richards* test to the instant case we conclude that plaintiff did not demonstrate a triable issue of fact relating to City's statute of limitations defense. In considering the first two prongs of the *Richards* test, we find it difficult to perceive the alleged adverse actions as a continuing course of conduct. On this record they look much more like a collection of isolated employment decisions. But even assuming the conduct was sufficiently similar and frequent enough to constitute a single course of conduct, the situation had reached permanence well over a year before plaintiff commenced her lawsuit. Edwards assumed responsibility for the technical tasks in 1993. In answer to the grievance plaintiff filed in 1994 in which she alleges that she complained about the loss of those job duties, City's only response was to give her the opportunity to transfer out of the department. We can conceive of little that would be a more definitive denial of plaintiff's

request to perform certain job duties than an offer to transfer her out of the job altogether. Plaintiff, herself, admits that she accepted the transfer because she was told that was her only choice.

Plaintiff suggests that there was some ongoing effort to resolve her grievance when she transferred back to the service writer/parts manager position in 1995 since she believed when she did so that she would again be allowed to perform the technical job duties. But plaintiff's belief was based only on her "hope" that Mortenson, the director of public works, knew what she was thinking when he encouraged her to return to Automotive Services. She never discussed the issue with Mortenson and Edwards continued to perform the technical duties. The only evidence that plaintiff brought her dissatisfaction to anyone's attention before Vizcarra was hired in 1998, was her comment that for a year and half or two years after her return to Automotive Services in March 1995 she continually asked Edwards to be allowed to go out on the shop floor and perform the technical duties. Significantly, Edwards invariably and unequivocally denied her request.

Plaintiff also argues that in 1996 City eliminated the service writer/parts manager job, thereby concealing its need for a service writer and causing her to believe that there was nothing she could do to regain the duties she wanted. The argument is illogical because plaintiff knew that *someone* was performing those job duties all along. Furthermore, the argument defeats application of the continuing violation doctrine because it is a concession that plaintiff knew that the situation had become permanent as to her in 1996.

We conclude that plaintiff's situation had become permanent at least by the time her job title changed in 1996 in that she should have known that further efforts to resolve the situation would be futile. Therefore, the conduct occurring outside the limitations period cannot be deemed part of a continuing violation for which City may be liable. The trial court was correct in ruling that an action based on conduct that occurred prior to September 22, 1997, was barred by the statute of limitations.

### 4. *City's Conduct Occurring Within the Statute of Limitations*

■ The offending conduct that plaintiff alleges occurred within the limitations period consisted of: (1) Edwards's limiting her responsibility for writing equipment specifications and maintaining contact with vendors, and requiring her to work out of the front office, and (2) hiring Vizcarra for a position that plaintiff claims was actually the service writer portion of her old service writer/parts manager position.

As to the alleged further erosion of plaintiff's responsibilities and moving her desk to the front office, City submitted evidence that it took these actions for legitimate nondiscriminatory business reasons. (See *Martin, supra*, 29 Cal.App.4th at p. 1730.) City explained that plaintiff's perception that Edwards had begun taking other duties away from her in 1997 was due to the fact that Edwards had implemented procedures that reduced the frequency with which those jobs needed to be done or had reassigned certain duties for purposes of efficiency. He moved plaintiff's work area out of his office because the director of human resources had recommended that he do so to have privacy for meetings and confidential records.

As to the hiring of Vizcarra, City produced evidence to show that it did not offer plaintiff the equipment mechanic/technician position into which Vizcarra was initially hired for several legitimate reasons. The position was an "As Needed" position and City had a longstanding policy not to place regular employees in "As Needed" positions. The position was a mechanic's position, for which plaintiff was admittedly unqualified. And neither Edwards nor Mauck was aware that plaintiff had ever performed the technical duties.

City showed also that in choosing Vizcarra for the permanent fleet assistant position it used a neutral method of evaluating the candidates and chose Vizcarra over plaintiff for reasons unrelated to gender. Edwards took no part in the process. Vizcarra scored highest of the four applicants on the oral examination and, in addition, he had more of the "highly desirable" qualifications than plaintiff had.

City met its burden by producing evidence of a legitimate, nondiscriminatory explanation for its assignment of job duties and its selection of Vizcarra for the equipment mechanic/technician and fleet assistant positions. City's showing was internally consistent and plausible. In short, it was credible on its face and sufficient to shift the burden to plaintiff to raise a triable issue of fact.

As to the further erosion of her work duties since 1997 and her exclusion from the shop floor, plaintiff disputed some of City's proffered explanation in her separate statement, but she provided *no* facts in support of her assertions. The real heart of plaintiff's dissatisfaction, and that which evidently prompted the filing of this lawsuit, was the hiring of Art Vizcarra. The gist of plaintiff's contention on that point is that City never actually eliminated the service writer position as she had been told, but after incorporating it into Edwards's job found a way to have it reemerge with the equipment technician and fleet assistant jobs it gave to Vizcarra. According

to plaintiff, this was all done as a subterfuge to keep her out of the service writer position.

We reject any argument that plaintiff was somehow entitled to the service writer job, however denominated, because if plaintiff had any legal claim to that position or the tasks it encompassed in 1993, she lost it by failing to assert her claim before the running of the statute of limitations. Therefore, the only way that City's hiring of Vizcarra could serve as a basis for a gender discrimination claim is if City hired Vizcarra rather than plaintiff because Vizcarra was male and plaintiff was female.

Plaintiff wholly failed to produce evidence to controvert City's showing that it did not hire Vizcarra for any discriminatory reasons. Plaintiff could not controvert City's showing that she was not eligible or qualified for the position for which Vizcarra was initially hired or that he was more qualified than she was for the permanent position of fleet assistant, which encompassed the technical duties plaintiff wanted. Plaintiff attempted to raise a triable issue by offering three comments of Edwards: (1) when Edwards moved her desk in 1997 he told her to find a place in the front office "with the other women," (2) once in 1999 she heard him tell one of the technicians, in reference to the women who worked in the front office, not to "bother his harem," and (3) also in 1998 or 1999 she heard Edwards say: "Women have their place in the pecking order along with all the other farm animals."

Edwards's comments, while insensitive and possibly demonstrative of his personal bias against women, are insufficient to support an inference that City's hiring decisions were influenced by plaintiff's gender. First, plaintiff offered no evidence that Edwards was even aware of her interest in the job at the time Vizcarra was hired or that she had asserted her interest in performing the technical duties to anyone for well over a year before that.[3] Persons other than plaintiff had been performing the technical duties ever since Edwards first came to the department in 1993. There was no evidence that either Edwards or Mauck knew that plaintiff had performed those duties in the past. Plaintiff voiced her concerns about Vizcarra's job only *after* he was hired. No reasonable fact finder could draw from these facts the inference that plaintiff's gender was any part of City's decision to hire Vizcarra or its decision to have him take over the technical tasks.

Second, plaintiff failed to offer any evidence to controvert City's explanation that it hired Vizcarra into the permanent position because City fairly

---

[3]The evidence that plaintiff had continually asked Edwards to be allowed to perform the technical duties appears in her deposition testimony. She did not assert this fact in her separate statement nor does she mention it on appeal. Even giving plaintiff the benefit of our review of the entire record, it is undisputed that she did not assert her interest in the technical duties to Edwards for a full year before Vizcarra was hired, or to anyone else since 1994.

determined that he was better qualified than she was. Plaintiff did not dispute the fairness of the evaluation, the fact that Vizcarra performed much better on the oral examination and possessed more of the desirable qualifications than she did, or the fact that Edwards took no part in making the hiring decision. Thus, regardless of Edwards's personal opinions, no reasonable trier of fact could determine on these facts that City's refusal to hire plaintiff into the fleet assistant job was more likely based upon gender bias than it was upon the fact that plaintiff was less qualified than the person City hired.

In sum, plaintiff did not produce substantial responsive evidence to demonstrate a material triable controversy and, therefore, summary judgment was properly granted.

## DISPOSITION

The judgment is affirmed.

Elia, J., and Rushing, J., concurred.