Filed 1/21/14  Chaney v. Dept. of Corrrections CA2/7

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| ROY CHANEY, | B242440 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. BC442101) |
| v. | |
| DEPARTMENT OF CORRECTIONS AND REHABILITATION, | |
| Defendant and Respondent. | |

———————————

APPEAL from a judgment of the Superior Court of Los Angeles County, Yvette Palazuelos, Judge.  Affirmed.

Wilson Trial Group, Dennis P. Wilson; The Luti Law Firm and Anthony N. Luti for Plaintiff and Appellant.

Kamala D. Harris, Attorney General, Alicia M. B. Fowler, Senior Assistant Attorney General, Michael E. Whitaker, and Leah C. Gershon, Deputy Attorneys General, for Plaintiff and Respondent.

———————————

Roy Chaney, a parole administrator with the California Department of Corrections and Rehabilitation (Department), appeals from the judgment entered after the trial court granted summary judgment in favor of the Department on Chaney's claims for discrimination, failure to prevent discrimination and retaliation in violation of the Fair Employment and Housing Act (FEHA) (Gov. Code, § 12900 et seq.).[1] Chaney's FEHA claims all relate to his administrative transfer following disagreements regarding his handling of housing restrictions on paroled sex offenders with disabilities. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND[2]

1. *The Events Precipitating Chaney's Transfer*

    a. *The placement of James Maciel in non-compliant housing*

In July 2008 Chaney, who is African-American, was employed by the Department as a parole administrator for Los Angeles County. Chaney supervised parole agents, parole agent supervisors, personnel working at parole outpatient clinics and clerical staff. His superiors included Alfred Martinez, Jr., the regional director for Los Angeles County; Robert Ambroselli, the deputy director of parole; and Thomas Hoffman, the director of parole.

---

[1] Statutory references are to the Government Code.

[2] Chaney's statement of facts is woefully inadequate. The California Rules of Court require every factual and procedural statement in an appellate brief to be supported by a citation to the appellate record. (Cal. Rules of Court, rule 14(a)(1)(C).) Chaney, however, largely cites to his own statement of undisputed facts, the bulk of which the Department disputes, not the underlying evidence scattered throughout the seven-volume record. "It is not the task of the reviewing court to search the record for evidence that supports the party's statement; it is for the party to cite the court to those references. Upon the party's failure to do so, the appellate court need not consider or may disregard the matter." (*Regents of University of California v. Sheily* (2004) 122 Cal.App.4th 824, 826, fn. 1; see also *Byars v. SCME Mortgage Bankers, Inc.* (2003) 109 Cal.App.4th 1134, 1140-1141; *Gotschall v. Daley* (2002) 96 Cal.App.4th 479, 481, fn. 1.) Nevertheless, we exercise our discretion to consider Chaney's arguments, but admonish counsel to heed the rules of appellate procedure or risk jeopardizing client claims in the future.

Proposition 83, the Sexual Predator Punishment and Control Act: Jessica's Law, approved at the November 2006 general election, prohibits sex offenders, after they are released from prison, from living within 2,000 feet of schools or parks where children regularly gather. The Department is responsible for enforcing the residency restriction and monitors parolees with a global positioning system (GPS) for life. (See Pen. Code, §§ 3003.5, subd. (b), 3004.) As the Department began implementing Jessica's Law, it was confronted with determining which parolees required housing suitable for persons with disabilities under the Americans with Disabilities Act (ADA) (42 U.S.C. § 12101 et seq.). At his deposition Hoffman testified there was pressure from the Governor and legislators that even disabled parolees be housed in strict accordance with Jessica's Law. Consequently, medical waivers to accommodate disabled parolees were limited to individuals who were so incapacitated they "could not pose a threat to the public at all," such as quadriplegics or parolees strapped to a hospital bed receiving intravenous drugs. To obtain a medical waiver, a parole agent must notify his or her supervisor. The parole administrator prepares a request for waiver, which must then be authorized by the regional director and Hoffman. Hoffman testified he evaluates each case individually.

In July 2008 Chaney was advised he was being investigated by the Department's office of internal affairs (OIA). Martinez testified he initiated the investigation of Chaney, as well as three other African-American employees and one Hispanic employee,[3] after receiving information they had failed to report that a motel the Department was using to house parolees was not in compliance with Jessica's Law.

In August 2008 parole agents supervised by Chaney asked for his assistance in finding housing for 60-year-old James Maciel, who was confined to a wheelchair.[4] On August 19, 2008 Maciel was referred to a 24-hour care facility that was not compliant with Jessica's Law. Chaney signed a request for a medical waiver stating, "The subject is

[3] The Hispanic employee died during the investigation.

[4] Chaney was not directly responsible for facilitating the placement of sex offenders but was responsible for supervising the staff who were.

disable[d] and is in a wheel chair. He will be monitored 24-hours a day by extended nursing care and by the GPS device he currently wears on his left ankle." On August 22, 2008 Claudia Chavez, who was Martinez's secretary and tasked with fixing grammatical and spelling errors on the waiver requests, asked Chaney to send her an email version of his request so she could correct it "prior to forwarding to the Regional for his review." Although the request had correctly identified the parolee as Maciel in two locations, in a third it referred to "Parolee Pearl." On August 26, 2008 Chaney signed a revised request for waiver, but it too required corrections. Although Martinez acknowledged he had reviewed the August 26, 2008 request and knew Maciel had been placed in non-compliant housing, he did not instruct that Maciel be relocated. Finally, on September 9, 2008 a corrected request was forward to Martinez for review.

On September 10, 2008 Rebecca Hernandez, a unit supervisor, sent Chaney a memorandum stating she had reviewed Maciel's case file and "observed that several [Department] policies and law violations have occurred on this case." Hernandez stated the medical waiver did not contain signatures by Martinez or Hoffman and facility staff reported Maciel had been leaving the facility without a chaperone and without signing in and out as required. A few days later Hernandez forwarded a copy of the memorandum to deputy director Ambroselli. Martinez testified Ambroselli called him after receiving the document. After several conversations between them, as well as between Martinez and Chaney, Ambroselli concluded Maciel was not sufficiently incapacitated to warrant a waiver. Because the Department could not immediately find housing compliant with Jessica's Law that could also accommodate a wheelchair, Maciel was placed into custody until suitable housing could be found.[5] On the night of Maciel's arrest, Chaney complained to Martinez that "what [Martinez] was doing was inappropriate, possibly illegal and was against ADA law" because Maciel had legitimate disabilities.

---

[5]     A Torrance police detective who had become aware Maciel was placed in the 24-hour care facility had threatened to post fliers alerting the neighborhood that a sex offender was living in the neighborhood and "get a posse together" to place him in custody because he was not living in housing compliant with Jessica's Law.

b. *The employee counseling letter and Chaney's administrative transfer*

On September 26, 2008 Martinez sent Chaney an "employee counseling letter" stating Chaney had failed to timely submit the request for a waiver for Maciel resulting in his erroneous placement in non-complaint housing. The letter stated, "Based on the medical documentation that you provided prepared by Doctor Martin, the parolee did not have medical needs that required the care of a 24-hour licensed care facility; therefore making him ineligible to reside in non-compliant housing. Your failure to comply with Policy No. 07-36 created a liability for the Division which is unacceptable. [¶] As a District Administrator, you need to familiarize yourself with Policy No. 07-36, Implementation of Proposition 83, AKA Jessica's Law. You need to provide training to your staff as well. You need to ensure that in the future you comply with the policy when requesting waivers for Jessica's Law Residency Restrictions."

Chaney responded to the Department's counseling letter with a nine-page "rebuttal" dated November 19, 2008. Chaney explained he and his agents acted pursuant to Department training and their understanding of their responsibilities under the ADA but that there were "grey areas" the Department had acknowledged. Chaney contended, "When staff[] come to you and ask for clarification on how to proceed on a matter and ways to better manage this entire issue in view of the grey areas, and you respond for us to use our discretion but then write staff up when they do, reflects a lack of fundamental fairness for the Department as a whole." Chaney asked that the counseling letter be removed from his personnel file.

In a memorandum also dated November 19, 2008 Chaney was advised he was being "administratively transferred to the Decentralized Revocation Unit (DRU) as a Parole Administrator." Although Chaney's job title did not change, his responsibilities did. According to Chaney, all he did in his new position was read parole violation reports and input them into a computer, a job he described as unchallenging, boring and tedious with no chance of promotion.

5

On November 28, 2008 Chaney sent Hoffman a letter stating he was "disappointed and disturbed" he had been relegated "to a position of lesser authority and responsibility because of the Maciel case" and complained he and staff were being penalized for using their discretion after being told to do so to resolve ambiguities in Department policy.

In a letter dated January 29, 2009 the Department explained the employee counseling letter had been placed in Chaney's supervisory file, not the personnel file, and denied Chaney's request to remove it. The Department explained, "In your case, corrective action was appropriate due to your failure to comply with departmental policy and was not considered adverse in nature. As stated in DOM Section 33030.8, 'The purpose of corrective action is to help an employee change problem behavior of performance before discipline is necessary and may be imposed for any employee conduct or performance that is correctable by means of counseling and/or training. Corrective actions may also be used to rebut the employee's claim that he/she did not know about a statute, regulation, or procedure and/or expectation.'"

In 2009 the OIA completed its investigation into the allegations Chaney and the other employees had committed misconduct by failing to report a facility being used by the Department was not in compliance with the residency requirements of Jessica's Law. In a March 24, 2009 memorandum Martinez advised Chaney the investigation was closed and there had been no finding of wrongdoing. Chaney contends he never received the letter and was never told the investigation was completed.

2. *The First Amended Complaint*

In December 2011 Chaney filed the operative first amended complaint asserting causes of action for racial discrimination under FEHA (§ 12940, subd. (a)), failure to prevent discrimination (§ 12940, subd. (k)), retaliation (§ 12940, subd. (h)), and failure to prevent harassment (§ 12940, subd. (k)).[6] The amended complaint alleged the

---

6      The trial court sustained the Department's demurrer to the cause of action for failure to prevent harassment without leave to amend, and Chaney does not challenge that ruling.

6

Department retaliated against Chaney because he had tried to accommodate Maciel's disabilities, had complained the Department's failure to do so was discriminatory and had complained about receiving the employee counseling letter and his transfer. Although the amended complaint alleged Chaney had been subject to racial discrimination, it failed to include any supporting allegations.

3. *The Trial Court's Order Granting the Department's Motion for Summary Judgment*

In February 2012 the Department moved for summary judgment or, in the alternative, summary adjudication, contending in part Chaney had not been subjected to any adverse employment action; even if he had been, he could not establish a causal connection between his race and the adverse employment action; and, in any event, the Department had legitimate nondiscriminatory reasons for initiating the OIA investigation, issuing the employee counseling letter and transferring Chaney. With respect to the cause of action for retaliation, the Department further argued Chaney had not engaged in protected activity under FEHA.

In opposition Chaney argued he had established a prima facie case of discrimination or at least presented evidence of discriminatory motive raising a triable issue of fact: He had received nothing but positive performance reviews and promotions for 37 years until the July 2008 OIA investigation; the OIA investigation targeted only African-American employees inasmuch as the Hispanic employee initially included in the investigation had died; the OIA determined the accusations were "utterly baseless and, thus came back as unfounded"; Chaney was aware of at least three other parole administrators who had almost 300 placement problems in their districts, but none was treated the way he was; the eight or nine people who had succeeded to Chaney's position were not African-American except one person, who held the position for less than a year; Martinez could not identify a single Caucasian, Hispanic or Asian employee who had received a counseling letter that was not purged after a year; and the department where Chaney was transferred had a long standing problem with promoting minorities.

7

With respect to his retaliation claim, Chaney argued the fact he received a counseling letter and was transferred contemporaneously with complaining the Department had engaged in improper and potentially illegal activity by failing to accommodate Maciel's disabilities under the ADA and placing Maciel into custody was sufficient to demonstrate Chaney was a victim of retaliation.

The trial court granted the Department's motion for summary judgment. The court found Chaney had failed to present any evidence that suggested discrimination was a motive for the Department's actions, thus negating his cause of action for failure to prevent discrimination as well. The court further found Chaney's retaliation claim was without merit because he failed to provide sufficient evidence to demonstrate he had engaged in protected activity under FEHA, a necessary predicate for a retaliation claim.[7]

## DISCUSSSION

### 1. *Standard of Review*

A motion for summary judgment is properly granted only when "all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." (Code Civ. Proc., § 437c, subd. (c).) A defendant seeking summary judgment bears the initial burden of proving a cause of action has no merit by demonstrating that one or more of its elements cannot be established or there is a complete defense to it. (See Code Civ. Proc., § 473c, subds. (a), (p)(2); *Cucuzza v. City of Santa* Clara (2002) 104 Cal.App.4th 1031, 1038.) We review a grant of summary judgment de novo and decide independently whether the facts not subject to triable dispute warrant judgment for the moving party as a matter of law. (*Intel*

---

[7] The court overruled all of Chaney's evidentiary objections and sustained some of the Department's. Chaney's cursory argument the trial court erred in its evidentiary rulings is wholly inadequate to demonstrate the trial court abused its discretion. (See *Salas v. Department of Transportation* (2011) 198 Cal.App.4th 1058, 1074 [appellant's failure to properly challenge the trial court's many evidentiary rulings and to support such challenge with reasoned argument and citation to authorities forfeits the issue on appeal]; see generally *Natkin v. California Unemployment Insurance Appeals Board* (2013) 219 Cal.App.4th 997, 1002 [evidentiary rulings reviewed for abuse of discretion].)

8

*Corp. v. Hamidi* (2003) 30 Cal.4th 1342, 1348.) We view the evidence in the light most favorable to the opposing party, liberally construing the opposing party's evidence and strictly scrutinizing the moving party's. (*O'Riordan v. Federal Kemper Life Assurance Co.* (2005) 36 Cal.4th 281, 284.)

2.  *Chaney Failed To Raise a Triable Issue of Material Fact on His Discrimination Claims*

FEHA prohibits an employer from, among other things, discriminating against a person on the basis of race in compensation, terms, conditions or privileges of employment. (§ 12940, subd. (a); see *Clark v. Claremont University Center* (1992) 6 Cal.App.4th 639, 662.) Discriminatory intent is a necessary element of a racial discrimination claim. (§ 12940, subds. (a), (h); see *Clark*, at p. 662; *Mixon v. Fair Employment & Housing Com.* (1987) 192 Cal.App.3d 1306, 1316 (*Mixon*).) Because direct evidence of discriminatory intent is rare, California has adopted the three-stage burden-shifting test established by the United States Supreme Court in *McDonnell Douglas Corp. v. Green* (1973) 411 U.S. 792 [93 S.Ct. 1817, 36 L.Ed.2d 668] for trying discrimination claims based on a theory of intentional discrimination (disparate treatment). (*Guz v. Bechtel National, Inc.* (2000) 24 Cal.4th 317, 356-357 (*Guz*).) "At trial, the *McDonnell Douglas* test places on the plaintiff the initial burden to establish a prima facie case of discrimination. . . . [¶] The specific elements of a prima facie case may vary depending on the particular facts. [Citations.] Generally, the plaintiff must provide evidence that (1) he [or she] was a member of a protected class, (2) he [or she] was qualified for the position he [or she] sought or was performing competently in the position he [or she] held, (3) he [or she] suffered an adverse employment action, such as termination, demotion, or denial of an available job, and (4) some circumstance suggests discriminatory motive. [Citations, fn. omitted.] [¶] If, at trial, the plaintiff establishes a prima facie case, a presumption of discrimination arises. . . . [¶] Accordingly, at this trial stage, the burden shifts to the employer to rebut the presumption by producing admissible evidence, sufficient to 'raise[] a genuine issue of fact' and to 'justify a judgment for the [employer],' that its action was taken for a legitimate, nondiscriminatory reason.

9

[Citations.] [¶] If the employer sustains this burden, the presumption of discrimination disappears. [Citations.] The plaintiff must then have the opportunity to attack the employer's proffered reasons as pretexts for discrimination, or to offer any other evidence of discriminatory motive. [Citations.] . . . [Citations.] The ultimate burden of persuasion on the issue of actual discrimination remains with the plaintiff." (*Id.* at pp. 354-356.)

An employer moving for summary judgment on a FEHA cause of action for discrimination may satisfy its initial burden of proving a cause of action has no merit by showing either that one or more elements of the prima facie case "is lacking, or that the adverse employment action was based on legitimate nondiscriminatory factors." (*Cucuzza v. City of Santa Clara*, *supra*, 104 Cal.App.4th at p. 1038; see *Guz*, *supra*, 24 Cal.4th at pp. 356-357; *Sada v. Robert F. Kennedy Medical Center* (1997) 56 Cal.App.4th 138, 150.) The plaintiff must then set forth specific facts sufficient to allow a trier of fact reasonably to conclude the employer had engaged in intentional discrimination. (*Guz,* at p. 357; *Sada,* at p. 150.) "[A]n employer is entitled to summary judgment if, considering the employer's innocent explanation for its actions, the evidence as a whole is insufficient to permit a rational inference that the employer's actual motive was discriminatory." (*Guz,* at p. 361.)

Chaney argues he met his minimal burden of establishing a prima facie case of discrimination because there is no dispute the individuals who succeeded to his position were not African-American except one employee who lasted less than a year. Chaney's argument is misplaced. Whether or not Chaney's evidence was sufficient for a prima facie case of discrimination, once the Department demonstrated it had one or more legitimate reasons for taking the challenged administrative actions, Chaney was required to present "'substantial responsive evidence' that the employer's proffered reasons were untrue or pretextual" or other evidence the Department had acted with a discriminatory animus from which a reasonable trier of fact could conclude the Department had engaged in intentional discrimination. (*Loggins v. Kaiser Permanente Internat.* (2007)

10

151 Cal.App.4th 1102, 1109; see *Batarse v. Service Employees Internat. Union Local 1000* (2012) 209 Cal.App.4th 820, 834; see also *Kelly v. Stamps.com Inc.* (2005) 135 Cal.App.4th 1088, 1097-1098 [if a defendant employer's motion for summary judgment "relies in whole or in part on a showing of nondiscriminatory reasons for the [adverse employment action], the employer satisfies its burden as moving party if it presents evidence of such nondiscriminatory reasons that would permit a trier of fact to find, more likely than not, that they were the basis for the [adverse action]. [Citations.] To defeat the motion, the employee then must adduce or point to evidence raising a triable issue, that would permit a trier of fact to find by a preponderance that intentional discrimination occurred"].)

"At least three types of evidence can be used to show pretext: (1) direct evidence of retaliation, such as statements or admissions, (2) comparative evidence, and (3) statistics." (*Iwekaogwu v. City of Los Angeles* (1999) 75 Cal.App.4th 803, 816; see *Alch v. Superior Court* (2008) 165 Cal.App.4th 1412, 1428 ["[s]tatistical proof is indispensable in a disparate impact case"].) To be probative, however, comparative data must be directed at showing disparate treatment between employees that are "similarly situated" to the plaintiff in all relevant respects. (*Iwekaogwu*, at p. 817 ["comparative evidence of pretext . . . [is] evidence that [plaintiff] was treated differently from others who were similarly situated"]; *Guz, supra,* 24 Cal.4th at p. 369 [plaintiff in discrimination case failed to show pretext through statistical data on employees that were not "similar or comparable"].) Circumstantial evidence may also be used to raise a triable issue of material fact that an employer's action was more likely than not motivated by a discriminatory reason, but the circumstantial evidence must be both ""'specific'"" and ""'substantial.'"" (*Morgan v. Regents of University of Cal.* (2000) 88 Cal.App.4th 52, 69; accord, *Batarse v. Service Employees Intern. Union, Local 1000*, *supra*, 209 Cal.App.4th at p. 834.)

Chaney does not purport to offer any direct or statistical evidence establishing intentional discrimination occurred. As the trial court ruled, the mix of comparative and

circumstantial evidence offered in his opposition papers failed to raise a triable issue suggesting the Department had acted with discriminatory animus.[8] To be sure, Chaney's evidence indicated he had received only positive reviews and promotions until the OIA investigation was launched and the Maciel placement was made. But a history of exemplary performance in no way refutes the Department's position he failed to follow Department protocol implementing Jessica's Law, thus warranting investigation and counseling. Chaney's self-assessment that his performance was appropriate under the circumstances does not create a triable issue on discriminatory animus. (See *Horn v. Cushman & Wakefield Western, Inc.* (1999) 72 Cal.App.4th 798, 816 ["an employee's subjective personal judgments of his or her competence alone do not raise a genuine issue of material fact"].) Indeed, even if the Department's own failures resulted in an implementation policy with grey areas that made Chaney's errors inevitable, as long as the Department's decisions to counsel Chaney or transfer him were not motivated by discrimination, Chaney's claims fail. (See *Guz, supra,* 24 Cal.4th at p. 357 ["if nondiscriminatory, [the employer's] true reasons need not necessarily have been wise or correct"].) As for the OIA investigation, the initial inclusion of an Hispanic employee in the group being reviewed dispels the assertion the Department targeted only African-American employees. The death of that individual during the investigation did not transform a nondiscriminatory procedure into an improper one targeting only African-Americans.

Chaney's claim of discriminatory animus is further undermined by the fact there was an African-American parole administrator who held what was apparently a high-turnover position for a comparatively significant period of time. Moreover, Chaney offers no evidence from Department records as to who succeeded him. Instead, his argument is supported only by his own imprecise testimony: "The [African-American]

---

8     The Department argues placing Chaney under investigation, sending him and employee counseling letter and transferring him are not adverse employment actions as a matter of law. We need not decide this issue because, even if they are adverse employment actions, there is no triable issue of fact as to discriminatory intent.

person that took over was one my senior supervisors, Mr. Breedlove. And since that time Mr. Breedlove left the [D]epartment, and from my understanding from the people who call . . . still stay in contact, there's been about eight to nine different parole administrators there in the last year." Finally, Chaney's general contentions, after extensive discovery had taken place, that other administrators had placement problems in their districts but were not subjected to adverse administrative actions, as he was, and that Martinez could not identify any non-African-American employees who had a received a counseling letter that was not purged after a year are insufficient to defeat the Department's motion.[9] Chaney's vague and unsupported testimony does not demonstrate disparate treatment between employees similarly situated to Chaney in all relevant aspects and lacks the specificity required for circumstantial evidence to create a genuine issue of material fact.

> 2. *Chaney Failed To Raise a Triable Issue of Material Fact on His Retaliation Claim*

To establish a prima facie case of retaliation under FEHA, a plaintiff must show he or she engaged in protected activity, the employer subjected the employee to an adverse employment action and a causal link existed between the protected activity and the employer's action. (*Yanowitz v. L'Oreal USA, Inc.* (2005) 36 Cal.4th 1028, 1042; see *Soukup v. Law Offices of Herbert Hafif* (2006) 39 Cal.4th 260, 287-288.) Once an employee establishes a prima facie case, the burden shifts to the employer to offer a legitimate, nonretaliatory reason for the adverse employment action. (*Yanowitz*, at p. 1042 [adopting the burden-shifting analysis of *McDonnell Douglas Corp. v. Green*, *supra*, 411 U.S. at pp. 802-805].) If the employer produces a legitimate business reason for the adverse employment action, "the presumption of retaliation ""drops out of the picture,"" and the burden shifts back to the employee to prove intentional retaliation." (*Yanowitz,* at p. 1042; see also *Scotch v. Art Institute of California* (2009)

---

[9]     It is undisputed Martinez had issued counseling letters to employees of other races.

13

173 Cal.App.4th 986, 1004.)

Chaney contends he suffered retaliation for complaining Maciel's placement into custody pending identification of housing compliant with Jessica's Law was "inappropriate, possibly illegal and was against ADA law." Although protected activity under section 12940, subdivision (h), encompasses "a broad range" of activity, it must nevertheless be related to proceedings or hearings under FEHA or acts made unlawful by the statutory scheme. (See *Yanowitz v. L'Oreal USA, Inc.*, *supra*, 36 Cal.4th at p. 1042 [§12940, subd. (h), "makes it an unlawful employment practice '[f]or any employer . . . to discharge, expel, or otherwise discriminate against any person because the person has *opposed any practices forbidden under this part or because the person has filed a complaint, testified, or assisted in any proceeding under this part*'"]; accord, *Rope v. Auto-Chlor System of Washington, Inc.* (2013) 220 Cal.App.4th 635, 650.) Chaney's complaint that a parolee's placement in custody may violate the ADA is wholly outside the scope of FEHA's prohibitions. (See *City of Moorpark v. Superior Court* (1998) 18 Cal.4th 1143, 1156-1157 ["FEHA broadly announces 'the public policy of this state that it is necessary to protect and safeguard the right and opportunity of all persons to seek, obtain, and hold employment without discrimination or abridgment on account of . . . physical disability [or] mental disability . . . .'"].) To the extent Chaney contends—and it is certainly not clear from his briefs in this court or before the trial court—he was subject to retaliation for writing the November 19, 2008 rebuttal letter and making other written complaints about the treatment he had received, none of Chaney's letters or complaints even remotely suggests he was complaining about discrimination because of his race.

## DISPOSITION

The judgment is affirmed. The Department is to recover its costs on appeal.


PERLUSS, P. J.


We concur:


WOODS, J.


SEGAL, J.*

---

\*       Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

15