# FILED

**NOT FOR PUBLICATION**

JAN 09 2017

**UNITED STATES COURT OF APPEALS**

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

**FOR THE NINTH CIRCUIT**

| | |
|---|---|
| NEIMAN FAHNESTOCK, | No. 14-56539 |
| Plaintiff-Appellant, | D.C. No. 2:13-cv-06759-BRO-JEM |
| v. | |
| MATTHEW WAGGONER, an individual; PAYCHEX NORTH AMERICA, INC., erroneously named in the First Amended Complaint as Paychex, Inc., | MEMORANDUM* |
| Defendants-Appellees. | |

Appeal from the United States District Court
for the Central District of California
Beverly Reid O'Connell, District Judge, Presiding

Argued and Submitted August 29, 2016
Pasadena, California

Before:  **KOZINSKI** and **BYBEE**, Circuit Judges, and **WALTER**,** District Judge.

---

\*       This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

\**       The Honorable Donald E. Walter, United States District Judge for the Western District of Louisiana, sitting by designation.

**1.** Fahnestock is time-barred by the Fair Employment and Housing Act's one-year statute of limitations from relying on conduct that occurred prior to August 7, 2012, unless the conduct constituted a continuing violation. Cal. Gov't Code § 12960(d). In order to show a continuing violation, Fahnestock must establish that the allegedly unlawful conduct occurring outside the limitations period (1) was "sufficiently similar in kind" to the alleged conduct within the limitations period; (2) "occurred with reasonable frequency"; and (3) has "not acquired a degree of permanence." Richards v. CH2M Hill, Inc., 29 P.3d 175, 190 (Cal. 2001).

Karen Toomey's decision to terminate Fahnestock and Nick Carr's decision not to rehire her, months after Waggoner left Paychex, are not similar in kind to the pre-limitations-period actions attributed to Waggoner. That Toomey and Carr may have taken Fahnestock's personnel file into account and thereby given present effect to Waggoner's pre-limitations-period actions is insufficient to make Waggoner's otherwise unrelated actions similar in kind to Toomey and Carr's decisions. Cf. United Air Lines, Inc. v. Evans, 431 U.S. 553, 558 (1977) ("[T]he emphasis should not be placed on mere continuity; the critical question is whether any present violation exists.").

Waggoner's pre-limitations-period conduct may have been frequent enough and sufficiently similar to Waggoner's conduct within the limitations period, but the situation reached a degree of permanence long before August 7, 2012. As early as April 2010, Fahnestock was allegedly pressured to take the CFR position. See Cucuzza v. City of Santa Clara, 128 Cal. Rptr. 2d 660, 668 (Ct. App. 2002) (holding that a state of permanence was reached when the City's only response to plaintiff's complaint about the loss of job duties was to give her the opportunity to transfer out of the department). And, by June 2010, when Fahnestock complained to HR about her territory reassignments to no avail, she was "on notice that further efforts to end the unlawful conduct w[ould] be in vain." Id. (citation omitted). For these reasons, Fahnestock may not base her discrimination and retaliation claims on Waggoner's pre-limitations-period actions.

The continuing violation doctrine, however, applies to Waggoner's harassment claim. Fahnestock alleges that Waggoner's weekly harassment began before the limitations period and continued until he resigned four months after the limitations period began running. Because there is no evidence that the harassment reached a state of permanence before the limitations period, we consider Waggoner's pre-limitations-period actions to determine liability on her harassment claim. See Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 122 (2002)

(applying the continuing violation doctrine to hostile work environment claim differently than to discrimination and retaliation claims involving discrete acts); Richards, 29 P.3d at 184–85 (recognizing that harassment often lacks the permanence that discriminatory actions have).

**2.** Fahnestock has proffered insufficient evidence of discriminatory motive to survive summary judgment on her discrimination claim. The only evidence of discriminatory motive relates to Waggoner, but Waggoner left months before Fahnestock was terminated. Nor is there any evidence that Toomey was "simply carr[ying] out the will of" Waggoner when terminating Fahnestock. Reeves v. Safeway Stores, Inc., 16 Cal. Rptr. 3d 717, 732 n.14 (Ct. App. 2004). In fact, it is undisputed that Toomey terminated Fahnestock, along with two men, because she decided to eliminate the CFR position.

Fahnestock contends that a reasonable jury could infer Waggoner's discriminatory intent based on his treatment of Fahnestock and her male colleagues. But, other than Fahnestock's own speculation, there is no evidence that Waggoner's condescending and discouraging attitude toward her was motivated by her sex rather than by her poor performance.

Fahnestock's reliance on Iris Cuadra and Sara Wilkening's testimony is equally unavailing. According to Cuadra and Wilkening, Waggoner assigned the territories and various types of sales credit in a discriminatory fashion. But such episodic and conclusory evidence, without more, falls short of establishing a "discriminatory pattern [that] is probative of motive." Diaz v. Am. Tel. & Tel., 752 F.2d 1356, 1363 (9th Cir. 1985). Cuadra's testimony that Waggoner frequently made lewd and sexist comments at women is also insufficient without any evidence that these comments were connected to employment decisionmaking. See Nesbit v. Pepsico, Inc., 994 F.2d 703, 705 (9th Cir. 1993) (stating that a comment "uttered in an ambivalent manner" and not tied to the adverse employment action was insufficient to establish discriminatory animus); Harris v. City of Santa Monica, 294 P.3d 49, 65 (Cal. 2013) ("[S]ection 12940(a) does not purport to outlaw discriminatory thoughts, beliefs, or stray remarks that are unconnected to employment decisionmaking.").

**3.** We also affirm the district court's grant of summary judgment to Waggoner and Paychex on Fahnestock's retaliation claim. In her complaint to Waggoner, Fahnestock compared herself only to "other reps with similar seniority levels." This didn't sufficiently convey her concern that Waggoner was

discriminating against her because of her sex.  See Yanowitz v. L'Oreal USA, Inc., 116 P.3d 1123, 1134 (Cal. 2005).  While Fahnestock did express her concerns about sex-based discrimination to HR and John Hickman, there is no evidence that the decision-makers behind the allegedly adverse employment actions even knew about these complaints, let alone decided to retaliate because of them.  See id. at 1130 (holding that a prima facie case of retaliation requires a "causal link" between the employee's protected activity and the employer's adverse employment action).

4.  Fahnestock's harassment claim also doesn't survive summary judgment. The allegedly harassing conduct consisted of, among other things, casual winks, condescending comments, eye rolls and the use of an unflattering picture.  All these allegations, even when taken together, do not establish conduct that was "severe enough or sufficiently pervasive to alter the conditions of employment and create a work environment that qualifies as hostile or abusive to employees because of their sex."  Lyle v. Warner Bros. Television Prod., 132 P.3d 211, 220 (Cal. 2006) (citations omitted).

5.  Because Fahnestock's claims of discrimination, retaliation and harassment fail, her derivative claim that Paychex failed to prevent Waggoner's discrimination, retaliation and harassment against her also fails.

**6.** Because the excluded statements are too speculative and conclusory to raise a genuine issue of material fact, Fahnestock has failed to establish that the district court's evidentiary rulings, even if erroneous, were prejudicial. See Ambat v. City & Cty. of San Francisco, 757 F.3d 1017, 1032 (9th Cir. 2014).

**AFFIRMED.**