Filed 5/12/25  Oguejiofor v. Los Angeles Unified School District CA2/5

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| MIRIAM OGUEJIOFOR, | B341104 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. 22STCV12876) |
| v. | |
| LOS ANGELES UNIFIED SCHOOL DISTRICT, et al., | |
| Defendants and Respondents. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Jon R. Takasugi, Judge.  Affirmed.

Law Offices of Akudinobi & Ikonte, Emmanuel C. Akudinobi, and Chijoke O. Ikonte for Plaintiff and Appellant.

Lozano Smith, Mark K. Kitabayashi, Wiley R. Driskill, and Ryan I. Ichinaga for Defendants and Respondents.

\* \* \* \* \* \*

A teacher sued her employer and two of her supervisors for various Fair Employment and Housing Act (FEHA) (Gov. Code, § 12900 et seq.) claims and tort claims. The trial court granted summary judgment for the employer and supervisors. This was correct, so we affirm.

## FACTS AND PROCEDURAL BACKGROUND

### I. Facts

#### A. *Plaintiff's race, national origin and pertinent employment history*

Miriam Oguejiofor (plaintiff) is an African-American woman of Nigerian descent.

Since 2014, plaintiff has worked for the Los Angeles Unified School District (the District) as a transition teacher. Transition teachers serve the District's special education students. Unlike teachers assigned to a "roster" of students at a specific school, transition teachers serve students at multiple school sites without formally acquiring seniority at any specific school and are assigned (and reassigned) where their specialized services are needed. Between 2014 and 2016, plaintiff had been assigned to five different school sites.

**B.** *October 2018 meeting*

In October 2018, plaintiff was assigned to Polytechnic High School (Poly). At that time, her supervisor was Maria Ricario; Ricario's supervisor was James Koontz.

At an October 23, 2018 meeting, several District staff members, including transition teachers, discussed with Ricario which special education students would be transferred to Lowman Career Transition Center (Lowman), which was a "startup" school site. Plaintiff urged that *her* students at Poly not be transferred because they were "high-functioning" and Lowman served what she viewed as "low[er]-functioning students," and argued that going against her wishes would violate the federal Individuals with Disabilities Education Act of 2004 (IDEA) (20 U.S.C. § 1400 et seq.). According to plaintiff, her comments "upset" Ricario, who then "threatened" to reassign plaintiff to a San Pedro school site that was farther away from plaintiff's home than Poly.[1]

Shortly thereafter, Koontz called a meeting between Ricario and plaintiff. Although Ricario pledged to "support" plaintiff more, plaintiff took issue with Ricario never uttering the words, "I apologize."

Plaintiff was never reassigned to any school site in San Pedro.

In May 2019, plaintiff received a positive performance evaluation.

---

1    Ricario denied making any threats, but we render this factual dispute immaterial by accepting plaintiff's version of the facts.

### C.    *August 2019 meeting*

Because Poly was serving a large population of special education students, the District decided that a second transition teacher was needed at Poly in the 2019-2020 school year and assigned Joyceyln Young to that role.  On August 26, 2019, Ricario convened a meeting with plaintiff and Young to discuss their division of tasks at Poly.  The meeting became "contentious" and "heated," with plaintiff being "disrespectful" toward Young and with Young "tearful[ly]" accusing plaintiff of being a "bully." The meeting ended when Young fled, teary eyed.

Based on Ricario's "personal[] observ[ation of] unprofessional behavior by" plaintiff toward Young, Ricario and Koontz "concluded" that the two transition teachers could not continue to work together at Poly.[2]  Because Poly needed two transition teachers and because Koontz believed plaintiff could not "work professionally with other transition teachers," Koontz—after consulting with the District's Staff Relations Department—on August 28, 2019, reassigned plaintiff to Lowman, which was in "dire need" of a transition teacher and whose principal was excited to work with plaintiff.

In light of the reason for plaintiff's transfer, the District's Staff Relations Department advised Koontz—and Koontz thereafter advised plaintiff—that plaintiff would need to undergo a performance evaluation in late 2019. Because plaintiff, as discussed below, was reassigned again in January 2020, that evaluation was never completed.

---

[2]    Young also filed a workplace violence complaint against plaintiff.  In her briefs on appeal, plaintiff asserts that Ricario drafted the complaint, but this assertion is not supported by the record.

4

When plaintiff arrived at Lowman, she was initially assigned to a "really cold" office next door to the school's principal; plaintiff speculated Ricario wanted the principal to "monitor [her] movement[s]." After complaining that the cold temperature affected her asthma, plaintiff was moved within days to a different space where she could control the thermostat.

### D. *Plaintiff's internal complaint*

In September 2019, plaintiff filed an internal complaint against Ricario alleging that plaintiff was a victim of racial discrimination because (1) Ricario had threatened to reassign her to San Pedro during the October 2018 meeting, (2) Ricario and Koontz had reassigned her to Lowman in August 2019, and (3) Koontz "acquiesced" to Ricario's demands to conduct a further evaluation and to rate plaintiff negatively.[3]

The District assigned Dr. Aaron Jeffery to investigate plaintiff's complaint. Plaintiff told Dr. Jeffery that she wanted to move to a different school where Ricario was not her supervisor. In December 2019, Dr. Jeffery concluded his investigation and determined plaintiff's claims were not substantiated. However, to accommodate plaintiff's request, Dr. Jeffery reassigned plaintiff effective January 2020 to Los Angeles High School (L.A. High), which was the only school with an opening for a transition teacher and where Ricario would not be her supervisor. Ricario and Koontz were not involved in that reassignment decision.

There is no evidence that Ricario, Koontz, or Dr. Jeffery ever said anything racially or ethnically charged.

---

[3] Plaintiff re-filed the complaint as a workplace violence complaint the following month.

## II. Procedural Background

On April 18, 2022, plaintiff sued the District, Ricario, and Koontz (collectively, defendants). In the operative first amended complaint, plaintiff asserted claims under FEHA against the District for discrimination based on race and national origin, retaliation, and failure to prevent discrimination and retaliation; she asserted tort claims against Ricario and Koontz for conspiracy to interfere with civil rights (42 U.S.C. § 1985) and intentional infliction of emotional distress.[4]

Defendants moved for summary judgment on specific grounds. As to plaintiff's discrimination claim, the District argued that (1) plaintiff could not establish that the District's actions were racially motivated, and (2) the District had legitimate, non-discriminatory reasons for its actions. As to plaintiff's retaliation claim, the District argued that plaintiff could not prove a causal link between any protected activity and the District's actions. The District argued that plaintiff's remaining claims were derivative and consequently failed.[5] Plaintiff's opposition to the motion was thin: Her brief was a mere seven pages long, including the caption page and proof of service; her separate statement accepted nearly every fact as

---

[4] Plaintiff also alleged a racial discrimination claim against the District under federal law, but the trial court dismissed that claim on demurrer and plaintiff does not challenge that ruling on appeal.

[5] Defendants expressly elected not to seek summary judgment on other elements of plaintiff's claims, such as (1) whether plaintiff suffered an adverse employment action and (2) whether plaintiff engaged in protected activity. Thus, plaintiff's arguments on appeal directed to these elements are irrelevant.

6

undisputed. Plaintiff did, however, attach her own declaration, in which she asserted that "[t]he reason" she was assigned to Lowman "was because of [her] race."

Following further briefing and a hearing, the trial court issued a ruling granting defendants' motion for summary judgment. With respect to the racial and national origin discrimination claim, the court ruled that the District had "submitted evidence that it had . . . legitimate nondiscriminatory reasons for [plaintiff's] transfer[s]" and that plaintiff had "not submit[ted] any evidence which could connect [any of the District's] actions to her race or national origin." With respect to the retaliation claim, the court ruled that there was no "causal connection between protected activity and an adverse employment action." The court ruled that plaintiff's remaining, derivative claims "necessarily" failed.

Following the entry of judgment for defendants, plaintiff timely appealed.

## DISCUSSION

On appeal, plaintiff attacks the summary judgment ruling. We review de novo a grant of summary judgment. (*Hartford Casualty Ins. Co. v. Swift Distribution, Inc.* (2014) 59 Cal.4th 277, 286.)

### I.     Race and National Origin Discrimination

Among other things, FEHA makes it unlawful "[f]or an employer, because of . . . race . . . [or] national origin . . . to discriminate against [a] person . . . in terms, conditions, or privileges of employment." (Gov. Code, § 12940, subd. (a).) Because proving that an employer discriminated against an employee "in terms, conditions, or privileges of employment" *because of* "race" or "national origin" turns on the

7

employer's motive, and because motive is typically established by circumstantial evidence, courts employ a burden-shifting mechanism for sussing out whether the adverse employment action the plaintiff suffered with respect to the terms, conditions, or privileges of employment was the product of a discriminatory (and hence actionable) motive. (See *Guz v. Bechtel National, Inc.* (2000) 24 Cal.4th 317, 355-356.) When that mechanism is applied to a summary judgment motion, the employer bears an "'initial burden'" of establishing that the conduct alleged to be an adverse employment action was based on "legitimate reasons . . . 'unrelated to unlawful discrimination.'" (*Serri v. Santa Clara University* (2014) 226 Cal.App.4th 830, 861, quoting *Hicks v. KNTV Television, Inc.* (2008) 160 Cal.App.4th 994, 1003.) If the employer carries this burden, the burden then shifts to the employee to "demonstrate a triable issue by producing substantial evidence that the employer's stated reasons were untrue or pretextual[] or that the employer acted with a discriminatory animus." (*Cucuzza v. City of Santa Clara* (2002) 104 Cal.App.4th 1031, 1038, italics omitted.) Evidence is "substantial" only if it is "specific" and "'"based on more than mere speculation, conjecture, or fantasy."'" (*Batarse v. Service Employees Internat. Union, Local 1000* (2012) 209 Cal.App.4th 820, 834; *McGrory v. Applied Signal Technology, Inc.* (2013) 212 Cal.App.4th 1510, 1537; *Cheal v. El Camino Hospital* (2014) 223 Cal.App.4th 736, 754-755.) These inquiries turn on the issues framed by the plaintiff's operative pleading. (*Musgrove v. Silver* (2022) 82 Cal.App.5th 694, 704.)

The trial court did not err in granting summary judgment for the District on plaintiff's FEHA claim of racial and national origin discrimination. The sole adverse consequences plaintiff

alleges—which we assume for purposes of our analysis to constitute "adverse employment actions"—are the District's acts in "forcibl[y] transfer[ing]" plaintiff from Poly to Lowman in August 2019 and from Lowman to L.A. High in January 2020. The Department carried its initial burden of establishing that these transfers were based on legitimate reasons unrelated to unlawful discrimination—namely, that the District moved plaintiff to Lowman to separate her from Young after their "contentious" and "heated" encounter, and moved plaintiff to L.A. High at her own request. Plaintiff did not carry her subsequent burden of producing substantial evidence that the District's stated reasons were untrue or pretextual. Plaintiff offered only two items of affirmative evidence. Although she did not mention it in her opposition to the summary judgment motion, plaintiff testified at her deposition to the fact that another African-American transition teacher was "unceremoniously" reassigned to a different school site around the same time plaintiff was reassigned, but it is undisputed that this teacher was "specifically selected" for reassignment because the assignee school needed a teacher and because the District thought "very highly" of this teacher. Plaintiff also pointed to her own declaration, in which she asserts that "the reason" she was assigned to Lowman "was because of [her] race." But this assertion is based on nothing more than speculation, and hence does not constitute substantial evidence. (*Featherstone v. Southern California Permanente Medical Group* (2017) 10 Cal.App.5th 1150, 1159; *King v. United Parcel Service, Inc.* (2007) 152 Cal.App.4th 426, 433-434).

Plaintiff responds with a plethora of arguments.

9

First, plaintiff argues that other conduct by the District raises an inference of discriminatory motive. Specifically, plaintiff points to (1) Ricario's threat at the October 2018 meeting to reassign her to San Pedro, (2) Koontz's notice that he would be conducting a further performance evaluation of plaintiff following her reassignment to Lowman, (3) the District's placement of plaintiff in a cold office at Lowman, (4) Dr. Jeffery's failure to conduct a sufficient investigation of her complaint (because, according to plaintiff, Dr. Jeffery did not ask her any questions about race or national origin[6] or interview five other witnesses she identified in her complaint), and (5) the District's requirement that plaintiff, while at Lowman, use a new computer system and not communicate with a particular teacher, set her up to fail. None of this conduct creates a triable issue of fact regarding motive. Ricario's threat was a comment that was never acted upon, as plaintiff remained at Poly and thereafter received a positive performance evaluation; that Ricario's comment was expressed in a threatening manner at the October 2018 meeting is of no moment, for an "aggressive or intimidating tone" alone does not establish "substantial evidence of discriminatory animus necessary to defeat a summary judgment motion." (*Arnold v. Dignity Health* (2020) 53 Cal.App.5th 412, 428.) Koontz's notice that he would be conducting a further

---

[6] Dr. Jeffery disputes this point. However, this dispute is rendered immaterial because we accept plaintiff's version of the facts. At oral argument, plaintiff argued that, if Dr. Jeffery *did* ask her about race during the interview, that question *itself* raises a question of racial bias; it does not, because, as plaintiff conceded at oral argument, the workplace violence complaint Dr. Jeffery investigated started out as a racial discrimination complaint.

evaluation is not evidence of animus because Koontz offered a non-discriminatory reason *why* he was required to conduct another evaluation (namely, due to plaintiff's conduct at the August 2019 meeting) and there is no evidence to indicate that reason was pretextual.  Plaintiff's complaints about being in a cold office were immediately redressed.  The fact that Dr. Jeffery did not ask every question plaintiff would have preferred or talk to every witness plaintiff suggested—when he undisputably interviewed the two main witnesses to the comments complained of—does not raise an inference that the investigation was a sham, which is what gives rise to an inference of discriminatory motive.  (Cf. *Nazir v. United Airlines, Inc.* (2009) 178 Cal.App.4th 243, 280 ["failure to interview witnesses for potentially exculpatory information evidences pretext"]; *Reeves v. Safeway Stores, Inc.* (2004) 121 Cal.App.4th 95, 117 [sham investigation].)  And the fact that plaintiff was required to use a new computer system and not to speak to a particular employee is not tied to anything but the new school's policy and plaintiff's prior disciplinary problems, respectively.  More to the point, *none* of these additional facts is tied to any evidence of animus on the basis of race or national origin.

Second, plaintiff urges that she is entitled to relief when the evidence is viewed through the prism of the standards set forth in *Reeves v. Sanderson Plumbing Products, Inc.* (2000) 530 U.S. 133 and *Price Waterhouse v. Hopkins* (1989) 490 U.S. 228, superseded by statute on other grounds as stated in *Landgraf v. Usi Film Prods.* (1994) 511 U.S. 244.[7]  She is wrong.  *Reeves* held

---

[7]	Plaintiff also cites *Muldrow v. City of St. Louis* (2024) 601 U.S. 346, but that case deals with what constitutes an "adverse employment action"—an issue not before us on appeal.

11

that an inference of discriminatory animus may be drawn from a plaintiff's proof that an employer's non-discriminatory reasons were shown to be untrue; in *Reeves*, for instance, the plaintiff proved that the employer's termination of the plaintiff for failure to keep accurate timesheets was factually incorrect. (*Reeves*, at pp. 145-147.) But plaintiff offers nothing to contradict the District's legitimate reasons for its actions beyond her speculation that it was all based on "race;" as noted above, that is insufficient. *Hopkins* dealt with proof of an employer's mixed motives—that is, when an employer's act is shown to be motivated in part by a legitimate motive and in part by a discriminatory motive. (*Hopkins*, at p. 250.) But plaintiff has not offered any proof that the District acted with an improper motive; this is therefore not a mixed motive case.

Third, plaintiff asserts that six "material facts" identified by the parties are disputed; from this, she argues that the trial court was precluded from granting summary judgment. Again, plaintiff is wrong. The facts she points to are, in the parties' papers, referred to as undisputed material facts 30, 57, 63, 66, 67, and 68. Fact 30 deals with the *reason* for plaintiff's reassignment to Lowman, but the sole evidence she offers to dispute that reason is her own declaration indicating it was for racial reasons; as noted above, her subjective speculation about the District's motives does not create a triable issue of fact. Fact 57 deals with whether plaintiff has other reasons, beyond those in her deposition, to support her claims of discrimination, but the sole evidence she offers is her declaration, which provides no additional reasons and which, in any event, cannot contradict her prior deposition testimony (*D'Amico v. Board of Medical Examiners* (1974) 11 Cal.3d 1, 21). Fact 63 deals with the dispute

12

over whether Ricario threatened to transfer plaintiff at the October 2018 meeting; as noted above, this dispute is not material. (*Pereda v. Atos Jiu Jitsu LLC* (2022) 85 Cal.App.5th 759, 773 [a plaintiff's dispute of most of facts in a separate statement "does *not* mean that any of those facts is material to the issue upon which summary judgment was ultimately granted"].) Fact 66 deals with the dispute over whether plaintiff was required to use a different computer system and barred from speaking with an employee while at Lowman; as noted above, any factual dispute on these points is not material. (*Ibid.*) Fact 67 deals with plaintiff's assignment to a "cold room" during her first few days at Lowman; as noted above, this dispute is not material. (*Ibid.*) Fact 68 deals with the adequacy of Dr. Jeffery's investigation; as noted above, this dispute is also not material. (*Ibid.*)

Fourth and finally, plaintiff argues that her discrimination claim must have merit because the trial court previously overruled a demurrer to that claim. This argument misunderstands the nature of summary judgment. A demurrer tests the sufficiency of the pleadings; summary judgment tests the sufficiency of the undisputed facts presented in the evidence.[8]

---

[8] Plaintiff makes countless other assertions in her briefs that are not supported by the record. We will not recount all of them, except to indicate that any absence of discussion regarding them means that we find them not to be grounded in the evidence presented to the trial court.

Plaintiff also indicates that the evidence is a "mosaic," a "tapestry," and a "mosaic tapestry" that must be considered as a whole. We have evaluated the evidence as a whole and conclude, for the reasons noted, that it fails to meet the threshold to avoid summary judgment.

13

## II.     Retaliation

FEHA also makes it unlawful "[f]or an employer . . . to discharge, expel, or otherwise discriminate against any person because the person has opposed any practices forbidden under" FEHA.  (Gov. Code, § 12940, subd. (h).)  A claim for retaliation in violation of FEHA requires proof that (1) the plaintiff engaged in a protected activity, (2) the plaintiff was subjected to an adverse employment action, and (3) there is a causal link between the two.  (*California Fair Employment & Housing Com. v. Gemini Aluminum Corp.* (2004) 122 Cal.App.4th 1004, 1018.)  In assessing the causal link between a plaintiff's protected activity and an employer's adverse employment action, we employ the same burden-shifting mechanism we use to assess motive in a discrimination claim.  (*Scheer v. Regents of University of California* (2022) 76 Cal.App.5th 904, 910 [burden-shifting mechanism applies to discrimination and retaliation]; *Wilkin v. Community Hospital of Monterey Peninsula* (2021) 71 Cal.App.5th 806, 828 ["In summary judgment proceedings, a FEHA retaliation claim is treated the same as a FEHA discrimination claim" and is subject to the same burden-shifting mechanism].)

Applying these standards, the trial court did not err in granting summary judgment for the District on plaintiff's FEHA retaliation claim.  The District carried its initial burden of showing the absence of a causal link between plaintiff's alleged protected activity on the one hand (namely, (1) filing her September 2019 complaint, and (2) complaining about the cold room at Lowman), and the District's allegedly adverse employment actions on the other (namely, (1) forcibly transferring plaintiff to Lowman and then L.A. High, (2) not

14

addressing the cold room at Lowman for a few days, and (3) "threatening" a further performance evaluation while at Lowman). Specifically, the District introduced evidence that the cold room was addressed in a matter of days and that plaintiff's move to L.A. High cut off the need for a further evaluation, as well as evidence that her transfers to Lowman and L.A. High were due to plaintiff's own conduct and plaintiff's own request, respectively. What is more, plaintiff never produced substantial evidence of pretext.

Plaintiff urges that the timing between the October 2018 meeting and the September 2019 transfer to Lowman raises an inference of retaliatory motive. It does not. Not only is that period of time too great to create an inference on its own (e.g., *Arteaga v. Brink's, Inc.* (2008) 163 Cal.App.4th 327, 353-354 [temporal proximity alone cannot create evidence of pretext sufficient to preclude summary judgment]; cf. *Coszalter v. City of Salem* (9th Cir. 2003) 320 F.3d 968, 977 [delay between protected speech and adverse employment action of three to eight months insufficient to preclude causal link]), but plaintiff ignores her own intervening conduct in getting into a "heated" and "contentious" argument with Young just days before her transfer to Lowman.

Plaintiff also argues that her transfer to L.A. High was in retaliation for her filing the September 2019 complaint. But the undisputed facts show that Dr. Jeffery transferred plaintiff to L.A. High because, after finding plaintiff's complaint to be unfounded, he nevertheless acceded to *her request* to be transferred to a new school where Ricario was not her supervisor. That plaintiff got precisely what she requested is not proof of retaliatory motive.

15

## III. Derivative claims

Plaintiff's remaining FEHA claim against the District for failure to prevent discrimination and plaintiff's tort claims against Ricario and Koontz for conspiracy and intentional infliction of emotional distress are all based on the same underlying conduct discussed above. Because we affirm the summary judgment ruling on plaintiff's discrimination and retaliation claims for the reasons discussed above, we likewise affirm the summary judgment ruling on plaintiff's derivative claims. (See *Dickson v. Burke Williams, Inc.* (2015) 234 Cal.App.4th 1307, 1318 [claim for failure to prevent discrimination fails where employer prevails on underlying claim for discrimination].)

## DISPOSITION

The judgment is affirmed. The parties are to bear their own costs on appeal.

<u>NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS</u>.


_____, P.J.
HOFFSTADT

We concur:


_____, J.
MOOR


_____, J.
KIM (D.)

16